**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Calvin Lyniol ROBINSON,
Defendant–Appellant.**

No. 89–10323.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1990.

Decided Aug. 31, 1990.

713

Barry Tarlow and Mark O. Heaney, Law Offices of Barry Tarlow, Los Angeles, Cal., for defendant-appellant.

Laurie K. Gray, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before GOODWIN, Chief Judge, SNEED and NOONAN, Circuit Judges.

GOODWIN, Chief Judge:

Defendant-appellant Calvin Lyniol Robinson appeals his conviction for conspiracy to import marijuana and hashish and related offenses, claiming various constitutional violations in connection with the conduct of his trial.

The charges of which Robinson was convicted were based upon the government's seizure of forty-three tons of hashish and thirteen tons of marijuana found welded inside the hull of a barge captained by Robinson. As the jury was being selected for his trial, Robinson made an election to proceed pro se. The district court found that Robinson's waiver was knowing, voluntary, and intelligent and dismissed defense counsel. Robinson represented him-

self throughout the trial and was convicted on all counts.

## I. *Validity of Robinson's Waiver*

Whether Robinson's waiver of his right to counsel was made knowingly, intelligently, and voluntarily is a mixed question of law and fact which we review de novo. *Harding v. Lewis*, 834 F.2d 853, 857 (9th Cir.1987), *cert. denied*, 488 U.S. 871; 109 S.Ct. 182, 102 L.Ed.2d 151 (1988).

The Supreme Court has held that under the sixth amendment a criminal defendant has the right to waive his right to counsel and represent himself, provided that he knowingly, intelligently, and voluntarily elects to do so. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). "Because a defendant normally gives up more than he gains when he elects self-representation," the district court is required to make "reasonably certain that he in fact wishes to represent himself." *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989) (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)).

■ Under the law of this circuit, the first requirement in this process is that the request to forego the assistance of counsel be unequivocal. *Adams*, 875 F.2d at 1444; *United States v. Smith*, 780 F.2d 810, 811 (9th Cir.1986). The fact that some of Robinson's statements of his preference to proceed pro se were accompanied by expressions of his feeling "forced" to do so does not render those statements equivocal. In *Adams* this court found that the defendant's repeated statements prior to trial that he wished to represent himself if the only alternative was the appointment of a certain attorney as counsel constituted a valid waiver, concluding "[w]hile his requests no doubt were *conditional,* they were not equivocal." 875 F.2d at 1445 (emphasis added).

The *Adams* court found its conclusion reinforced when tested against the purposes underlying the unequivocality requirement: the defendant was not seeking to waive his right in a thoughtless manner; he persisted despite the trial court's having engaged him in extensive discussion about the dangers of proceeding pro per; and his request did not appear to be "a momentary caprice or the result of thinking out loud." *Id.* Applying such a test to the record here similarly supports the district court's conclusion that Robinson's waiver was unequivocal: Robinson appears to have given the issue serious thought (especially considering that he had represented himself throughout a criminal trial once before); his second and subsequent expressions of his decision to proceed pro se were made after a lengthy discourse by the district court on the disadvantages of self-representation; and at no point do Robinson's statements convey the impression that his decision constituted a mere whim or caprice.

Robinson relies upon a pre–*Faretta* case, *Meeks v. Craven*, 482 F.2d 465 (9th Cir. 1973), in which this court denied habeas corpus relief to a prisoner who claimed that he was improperly denied the right of self-representation at his state-court trial. Given that Meeks made his request only once, in the context of presenting a single motion, and used the words "I think I will" in response to the question of whether he wanted to represent himself, this court affirmed the trial court's refusal of Meeks's request, characterizing it as a "prototype of equivocation." 482 F.2d at 467. In contrast, Robinson sought and was allowed to represent himself during the whole trial, expressed his preference, albeit cagily, several times, and was considered by the district court, after exhaustive examination on the question, to have made a clearly articulated choice. Under these circumstances, and in light of the above analysis under *Adams,* we find the unequivocality requirement satisfied.

■ The second requirement under this circuit's reading of *Faretta* is that the defendant's waiver of the right to counsel must be made knowingly and intelligently; "that is, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self representation." *United States v. Balough*, 820 F.2d 1485,

1487 (9th Cir.1987). "The preferred procedure to ensure that a waiver is knowingly and intelligently made is for the district court to discuss each of the three elements with the defendant in open court," although a "limited exception may exist" whereby the district court's failure to follow this procedure explicitly "will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *Id.* at 1488.

Aware of its duty to ensure that Robinson's waiver was made knowingly and intelligently, the district court pointedly discussed with Robinson all three elements outlined in *Balough*. Robinson contends that because the record reveals that he "had no meaningful understanding of the charges" against him this court cannot find his waiver knowing and intelligent. While it is true that at several points Robinson stated that he did not understand in response to the prosecutor's voir dire with respect to the *elements* of some of the charges, we agree with the government that Robinson's answers reflect more a disagreement with the charges as they related to him, than a misunderstanding of the nature of the charges themselves.

In addition, we note that the district court went beyond the requirements of *Balough* in the extensiveness of its discussion with Robinson and that perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver. *Cf. Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541–42 (declining to make inquiries into "how well or poorly Faretta had mastered the intricacies of the hearsay rule," given that "his technical knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself").

Also influential in our determination on this point is the fact that the district court made an express finding that Robinson's waiver was knowing and intelligent. *See United States v. Moya–Gomez,* 860 F.2d 706, 739 (7th Cir.1988) (influential in court's holding that defendant had made a know-

ing and intelligent waiver was express finding by district court: "This explicit finding by the district court, which had the opportunity to assess by its sustained observation the demeanor of the participant[ ], is entitled to our deference. We think the record shows that [the defendant] made a calculated choice"), *cert. denied,* —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

In addition to being knowing and intelligent, a waiver of the right to counsel must also be voluntary. *See Patterson v. Illinois,* 487 U.S. 285, 292 n. 4, 108 S.Ct. 2389, 2394–95 n. 4, 101 L.Ed.2d 261 (1988). Robinson appears to be arguing that his waiver of counsel was involuntary on two grounds: (1) because he was "forced to choose between ... representation by counsel and access to one box of legal materials" and *"pro per* representation and access to all his materials" and (2) because exercise of his right to counsel was conditioned upon his acceptance of attorney Paul Wolf as appointed counsel, despite the fact that he had "apparent" disagreements with Wolf about which the district court allegedly failed to inquire.

At the outset, we observe that there is no authority for the proposition that Robinson is entitled to an absolutely unconditional choice between exercising his right to counsel and his right to self-representation. As the Seventh Circuit pointed out in *Moya–Gomez*:

> A voluntary decision to waive counsel is not necessarily one that is entirely unconstrained. A criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive.

860 F.2d at 739.

■ Accordingly, we confine our review to the question whether the constraints the district court placed upon Robinson's choice to proceed pro se were constitutionally permissible. With regard to the existence of any coercion as a result of Robinson's being faced with the implicit[1] choice of re-

---

1. We use the term "implicit" because, as Robin-

son acknowledges, he never specifically request-

taining attorney Wolf, with whom he apparently had some tactical and strategy disagreements, and proceeding pro se, the case law of this circuit is in accord with the suggestion in *Moya–Gomez* that limitations on the range of a defendant's free choice with regard to appointed or retained counsel are not constitutionally offensive and do not render a subsequent election of pro se status involuntary.

In *United States v. Flewitt,* 874 F.2d 669 (9th Cir.1989), for example, when the district court gave the defendants a choice between accepting the continued services of the counsel that had been appointed for them or representing themselves, they chose the latter. In response to the assistant U.S. attorney's expression of concern, the district court said:

> I don't agree with you [assistant U.S. attorney] that it is not a valid waiver if they have only waived because they don't like their other attorney. I think it is a valid waiver if they know what they are doing.

*Id.* at 672–73. Quoting this language, we agreed with the conclusion of the district court. *Id.*

Similarly, in *United States v. Rylander,* 714 F.2d 996 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984), after appointing two different attorneys to represent the defendant, whom the defendant proceeded to discharge, the district court rejected the defendant's request that the district court appoint an attorney of the defendant's choosing and instead gave the defendant the choice of being represented by one of the previously appointed lawyers, hiring counsel himself, or proceeding pro se. The defendant chose the third option. We saw no problem with that ruling by the district court and ultimately found the waiver invalid only because the district court had failed to conduct a *Balough*-type colloquy with the defendant. 714 F.2d at 1005.

As a corollary to this argument, Robinson contends that, given the "obvious" conflicts between him and Wolf, the district court's failure to make further inquiries into the sources of his dissatisfaction before allowing him to proceed pro se violated his sixth amendment rights. This claim is wholly without merit. In the first place, the cases Robinson cites to support his contention all involve the district court's responsibilities once a defendant has *made a motion or request for substitute counsel*[2], which, as noted *supra* at 715 n. 1, Robinson manifestly failed to do. *See, e.g., United States v. Padilla,* 819 F.2d 952, 956 (10th Cir.1987) (citing *Williams,* 594 F.2d at 1260, and holding that, in general, "the district court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel *when substitution of counsel is requested*") (emphasis added). In fact, the district court appointed Wolf as stand-by counsel to assist Robinson and, as the government points out, the record shows that Robinson made significant use of Wolf's services during the course of the trial—hardly flagging for the district court a serious conflict.

Secondly, the record indicates that the district court did listen to Robinson's expressions of dissatisfaction with Wolf, but concluded that the crux of the problem was Robinson's anger at Wolf's refusal to raise defenses to the charges which Wolf considered frivolous. We find no error in the district court's failure to make further inquiries into Robinson's complaints or, *sua sponte* to offer Robinson substitute counsel. *Cf. Padilla,* 819 F.2d at 956 (finding that defendant's complaints that his appointed counsel refused to structure a defense as he directed did not constitute good cause for substitution of counsel, court stated, "[t]he Sixth Amendment provides no right to counsel blindly following a defendant's instructions [and] ... [f]urthermore, there is no absolute right to counsel of one's choice").

---

ed that new counsel be appointed to represent him.

**2.** *See* Appellant's Opening Brief at 26–27 (citing *Hudson v. Rushen,* 686 F.2d 826 (9th Cir.1982),

*cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *United States v. Williams,* 594 F.2d 1258 (9th Cir.1979); *Brown v. Craven,* 424 F.2d 1166 (9th Cir.1970)).

■ Robinson's original request to proceed pro se came after the district court denied his petition that it order the prison authorities in Oakland to allow him access to the voluminous legal materials he had amassed in anticipation of the trial in this case. The district court ruled correctly that a defendant who is represented by counsel has no constitutional right of access to legal materials. *See United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). Once Robinson made the election to proceed pro se, the district court, after personally examining the volume of material involved, ruled that Robinson could have one large storage box full of materials with him which he would have to fill selectively from among the six boxes and three bags he had accumulated. Neither Wolf nor Robinson objected initially to this order: in fact, Wolf answered "[t]hat's fine" after it was made.

Robinson now claims that his waiver of counsel was involuntary because he was forced to choose between his right to counsel and his "right" of access to case documents and other legal materials. He argues as well that the error was compounded by restrictions the district court placed upon his access to his legal materials after his election of pro se status.

Robinson misconstrues the extent of his rights under the sixth amendment. As noted in *Moya–Gomez, supra* at 739, a criminal defendant may be asked to choose between waiver and another course of action, so long as the course of action offered is not constitutionally offensive. As this court's decision in *Wilson* suggests, there is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and access to legal materials; the sixth amendment is satisfied by the offer of professional representation alone. There also is nothing constitutionally offensive about the limited access Robinson was provided once he made his election. He was attempting to make a record for appeal during the extended colloquy, but his legal theory turned out to be wrong.

■ Somewhat more generous than other courts which have addressed this issue[3], this court has declared that " '[t]he rights to notice, confrontation, and compulsory process' [recognized in *Faretta* ] mean, at a minimum, that time to prepare and *some access* to materials and witnesses are fundamental to a meaningful right of self representation." *Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir.1985) (emphasis added). A pro se defendant's right of "some access" to resources to aid the preparation of his defense must, however, be balanced against security considerations and the limitations of the penal system. *See id.* at 1447 (Hug, J. concurring) (pro se defendant must be afforded "reasonable access" to resources; while providing assistance of counsel to aid in preparation of defense may satisfy this requirement, "[o]ther reasonable alternatives, *consistent with jail or prison management,* can be utilized") (emphasis added).

The district court restricted Robinson's access to his legal materials out of a concern about the burden ordering unlimited access would place upon prison authorities. *See, e.g.,* Excerpts of Record at 35 ("I want him to have a right to the things he's entitled to, but I don't think the court should be engaged in some sort of decision that would inconvenience or make it difficult, if not impossible to manage a detention facility"). As noted *supra,* the court originally ordered Robinson to pare his six boxes down to one, but, after Robinson subsequently complained, the court offered him the option of transferring to the San Francisco jail and having access to *all* of his boxes. Robinson refused the offer, opting to stay in Oakland with one box, because he felt the San Francisco jail was too crowded and would prevent him from "hearing himself think" and preparing his defense. Again, apparently considering "reasonable access" in this case to mean on-site availability of all six boxes and

---

**3.** *See e.g., Moya–Gomez; United States v. Pina,* 844 F.2d 1 (1st Cir.1988); *United States ex rel. v.* *Lane,* 718 F.2d 226 (1983).

three bags of materials, Robinson asserts that the district court's attempts at accommodation were insufficient.

We reject this argument. While he did not grant Robinson's requests in full, the trial judge went out of his way to ensure Robinson "meaningful access" to resources with which to prepare his defense.[4] There was no abuse of discretion in tailoring the access order to conform to the perceived needs of prison management. *See Bell v. Wolfish,* 441 U.S. 520, 540, 99 S.Ct. 1861, 1874–75, 60 L.Ed.2d 447 (1979) ("the effective management of the detention facility once [an] individual is confined is a valid objective that may justify imposition of conditions or restrictions [on] pretrial detention").

## II. *Request for Counsel at Sentencing*

■ Robinson next argues that the district court erred in denying his request for counsel to represent him at sentencing.

Under this court's decision in *Menefield v. Borg,* 881 F.2d 696 (9th Cir.1989), a defendant who requests an attorney at the time of a motion for a new trial is entitled to have one appointed, even though he previously waived his right to counsel and represented himself at trial, absent a showing that his request is made in bad faith. The holding in *Menefield* was premised upon the fact that a motion for a new trial is a "critical stage" to which sixth amendment protections attach. *Id.* at 699. Pointing out that sentencing has long been held to constitute a critical stage for purposes of sixth amendment analysis, Robinson relies upon *Menefield* in claiming that his post-trial motion for counsel was a good-faith revocation of his election to proceed pro se which the district court erroneously failed to grant.

The government argues that both the timing of and the declaration that Robinson filed with his motion demonstrate that the motion was made in bad faith and properly denied by the district court. However, the district court made no finding of bad faith; instead, the record reveals that the district court felt that, having once rejected professional representation at trial, Robinson was not entitled to trouble the court with a subsequent request.[5]

We find that the district court erred in denying Robinson's motion for appointed counsel at sentencing. While the *Menefield* court did not discuss extensively what sort of evidence would support a finding of bad faith, the tenor of its comments and its emphasis on the advantages of professional representation for the defendant suggest that the benefit of the doubt should be given to defendants. *See, e.g.,* 881 F.2d at 698 ("[b]ecause of the centrality of the right to counsel, we will not deny a defendant that right during a critical stage of the prosecution unless *compelling* circumstances require us to do so") (emphasis added). Consistent with our holding in *Menefield* we therefore remand this case to the district court for resentencing and order the district court to afford Robinson assistance of appointed counsel.

## III. *Other Claims*

Robinson also alleges that various instances of prosecutorial and judicial misconduct deprived him of his rights to a fair trial and to self-representation. We find the evidence in the record insufficient to support these arguments.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing

---

4. The court also made arrangements, for example, for Robinson's documents to be transported back and forth every day from the courthouse to the jail. In addition, as the government points out, the district court took the additional step of appointing stand-by counsel to be available to aid Robinson and the record reveals he made full use of them.

5. *See, e.g.,* Reporter's Transcript of Proceedings, 8/8/89, at 7:

> The Court: You were offered—you had court appointed counsel. You denied court appointed counsel, you rejected it.... And now you're requesting another appointment with another counsel.
>
> You can't—you do not have the right to pick and choose if you're going to have appointed counsel.

with counsel present unless expressly waived.