953 F.2d 1388
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas W. BERTHOLD, Defendant-Appellant.
 No. 90-50264.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1991.
Decided Jan. 17, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Following a four day bench trial in which he appeared in propria persona, Thomas Berthold was convicted of concealing assets from a bankruptcy court, of withholding documents from a bankruptcy trustee and of criminal contempt. On appeal, Berthold contends that the trial judge erred by failing to determine sua sponte his competence both to stand trial and to waive his constitutional rights to counsel and a jury trial, and by denying him a continuance after the government rested its case-in-chief. Berthold also claims that he did not make a knowing and intelligent waiver of his constitutional right to counsel. We affirm Berthold's conviction. Neither Berthold's pre-trial history nor trial conduct were such as to raise a reasonable doubt as to his competency either to stand trial or to waive his constitutional rights. Berthold has also not shown that he failed to make a knowing and intelligent waiver of his right to counsel. Finally, the district court's denial of a continuance was neither arbitrary nor unreasonable in light of the complete lack of diligence by Berthold in preparing his defense and his failure to show that he would have utilized a continuance effectively.
 
 ANALYSIS
 1. Competence to stand trial
 
 3
 The "conviction of an accused person while he is legally incompetent violates due process." Pate v. Robinson, 383 U.S. 375, 378 (1966). The constitutional standard of competence is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). Accordingly, a trial judge must hold a competency hearing sua sponte whenever he "entertains or reasonably should entertain a good faith doubt" as to a "defendant's ability to participate intelligently in the proceedings and to make a reasoned choice among the alternatives presented." Chavez v. United States, 656 F.2d 512, 515 (9th Cir.1981) (citations omitted).[1]
 
 
 4
 When there has never been a psychiatric evaluation, hearing, or judicial determination of competence, review by the appellate court must be "comprehensive," id. at 517, and "not limited by either the abuse of discretion or clearly erroneous standard." DeKaplany v. Enomoto, 540 F.2d 975, 983 (9th Cir.1976), cert. denied, 429 U.S. 1075 (1977). "The question to be asked by the reviewing court is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." Id. Such doubt should arise when there is substantial evidence of incompetence. This circuit has defined "substantial evidence" in this context to mean "evidence that raises a substantial doubt about a defendant's competence." Chavez, 656 F.2d at 517.
 
 
 5
 In making our determination, we must look to all information about the defendant properly before the trial judge, including testimony, courtroom demeanor, and medical reports. See Drope v. Missouri, 420 U.S. 162, 180 (1975); Tillery v. Eyman, 492 F.2d 1056, 1059 (9th Cir.1974); Moore v. United States, 464 F.2d 663, 666 (9th Cir.1972). Finally, we must "accept as true all possible evidence of incompetence." Smith v. Ylst, 826 F.2d 872, 877 (9th Cir.1987), cert. denied, 488 U.S. 829 (1988).
 
 
 6
 Berthold argues that his conduct at trial and the fact of his criminal activities supports the conclusion that the trial judge should have entertained a reasonable doubt as to his competence. He cites as evidence a number of statements made at trial, including the statements that he was so anxious to tell his story that he wanted to proceed to trial immediately even though prejudiced, that a "few thousand years worth of coincidences" had happened in a couple of months, that he would flip a coin to decide whether to waive jury rights, and that the jurors could be second cousins of the FBI agent investigating the case. As for his criminal conduct, Berthold argues that refusing to cooperate with the bankruptcy trustee and threatening and harrassing the trustee's employees suggest a pattern of behavior inconsistent with that of a reasonable man.
 
 
 7
 Applying the test for when a sua sponte competency hearing is constitutionally mandated to the facts of this case, however, we conclude that the trial judge's failure to order a competency hearing for Berthold was reasonable. First, the fact of Berthold's criminal conduct alone clearly cannot be sufficient evidence of incompetence. If engaging in acts of bankruptcy fraud and criminal contempt constituted incompetence to stand trial, then no criminal defendant would ever stand trial. Second, even when Berthold's criminal conduct is coupled with his behavior at trial, a reasonable inference of incompetence does not arise. "[A] defendant's bizarre actions or statements, or counsel's statement that the defendant is incapable of cooperating in his own defense, or even psychiatric testimony need not alone raise sufficient doubt." United States v. Ives, 574 F.2d 1002, 1004 (9th Cir.1978) (emphasis in original). In Berthold's case, the only evidence that he has put forward consists of isolated comments made over the course of the trial and perhaps his stubborn refusal to retain a lawyer.[2] In the face of this insubstantial evidence, it was reasonable for the trial judge not to entertain a substantial doubt as to Berthold's competence to stand trial.[3] Accordingly, the district judge's failure to order a competency hearing was not error.
 
 
 8
 2. Competence to waive rights to counsel and a jury trial
 
 
 9
 Berthold also contends on appeal that the district court should have determined his competence to waive his rights to counsel and to a jury trial. A finding that a defendant is competent to stand trial does not resolve the question of whether a defendant is sufficiently competent to waive his constitutional rights. Westbrook v. Arizona, 384 U.S. 150 (1966); see also Blackmon v. Armontrout, 875 F.2d 164, 166 (8th Cir.) ("The standard for determining whether a person is capable of making a knowing and intelligent waiver of his right to counsel is not coextensive with the test for determining competency to proceed to trial."), cert. denied, 110 S.Ct. 337 (1989). "Trial courts must assess a defendant's competence with specific reference to the gravity of the decisions the defendant faces." Chavez, 656 F.2d at 518.
 
 
 10
 A higher degree of competency is required to waive constitutional rights than is required to stand trial. "[T]he degree of competency required to waive a constitutional right is that degree which enables [the defendant] to make decisions of very serious import." Sieling v. Eyman, 478 F.2d 211, 214-15 (9th Cir.1973). "A defendant is not competent to waive constitutional rights if mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of his waiver." Chavez, 656 F.2d at 518.
 
 
 11
 Even considering the higher level of competence required to waive constitutional rights, we conclude that Berthold did not present sufficient indicia of incompetence so as to require the judge to hold a competency hearing. As detailed above, isolated unreasonable comments at trial and a pattern of criminal conduct do not constitute significant evidence of incompetence. Furthermore, Berthold was able to weigh the options available to him and make reasoned--if unwise--decisions. For example, Berthold understood that waiving his right to counsel would enable him to proceed to trial immediately, and deliberated at length before he elected to proceed pro se. Berthold also chose to waive his right to a jury trial because he did not believe that the jurors would be able to understand the complex issues he felt were presented by the case. In sum, Berthold's conduct was not so irrational as to create a reasonable doubt about his ability to waive his constitutional rights. The district court's failure to hold a competency hearing on these issues was not error.
 
 3. Waiver of the right to counsel
 
 12
 The question whether a defendant has made a knowing, intelligent, and voluntary waiver of his right to counsel is a mixed question of law and fact that is reviewed de novo. United States v. Robinson, 913 F.2d 712, 714 (9th Cir.1990), cert. denied, 111 S.Ct. 1006 (1991). " 'Because a defendant normally gives up more than he gains when he elects self-representation,' the district court is required to make 'reasonably certain that he in fact wishes to represent himself.' " Id. (quoting Adams v. Carroll, 875 F.2d 1441, 1444 (9th Cir.1989)).
 
 
 13
 We look to three factors to determine whether a waiver of the right to counsel was constitutionally sufficient. The first requirement is that the request to proceed pro se be unequivocal. Although Berthold did periodically vacillate about his desire to proceed pro se, under the law of this circuit expressions of uncertainty and regret do not suffice to make a waiver void on the grounds that it was equivocal. In Adams, 875 F.2d at 1444, we noted that the requirement that a request to proceed pro se be unequivocal serves two purposes. First, it "acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation." Id. Second, it serves an institutional purpose by preventing a defendant from using his occasional musings to preserve two distinct grounds of appeal: if the court denies his motion to proceed pro se, the defendant could argue that he had been denied his right to represent himself, and if the court grants the motion, the defendant could argue that he had not made a knowing and intelligent waiver. Berthold's waiver satisfies the purposes underlying the unequivocality requirement.
 
 
 14
 The conclusion that Berthold's waiver was sufficiently unequivocal is reinforced by two recent Ninth Circuit decisions. In Robinson, the court held that a defendant's statements that he felt "forced" to waive his right to counsel did not make his request equivocal. 913 F.2d at 714. The circumstances behind Berthold's waiver are also quite similar to those in Adams, in which the court found that a defendant's expressed desire to represent himself if the only alternative were the appointment of a particular lawyer made his statements conditional, but not equivocal. Berthold, by stating that he was waiving his right to an attorney chiefly because he wanted his trial to begin immediately, also made his statements conditional but not equivocal. Moreover, as in Robinson and Adams, Berthold was not "seeking to waive his rights in a thoughtless manner; he persisted despite the trial court's having engaged him in extensive discussion about the dangers of proceeding pro per; and his request did not appear to be 'a momentary caprice or the result of thinking out loud.' " Robinson, 913 F.2d at 714 (quoting Adams, 875 F.2d at 1445)). While Berthold's waiver may have been made cagily and sometimes hesitatingly, it was not made equivocally.
 
 
 15
 The second requirement is to ensure that the defendant's waiver is made knowingly and intelligently. The preferred procedure for ensuring a knowing and intelligent waiver is for the court to discuss with the defendant, on the record, "the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." United States v. Balough, 820 F.2d 1485, 1487 (9th Cir.1987). The trial court's failure to follow this procedure does not mandate reversal, however, "when the record as a whole reveals a knowing and intelligent waiver." Id. at 1488. "On review, the issue is what the defendant understood about the proceedings, including the possible consequences, and the dangers of acting as his own attorney." Harding v. Lewis, 834 F.2d 853, 857 (9th Cir.1987), cert. denied, 488 U.S. 871 (1988).
 
 
 16
 Judge Hupp described the disadvantages of proceeding pro se to Berthold on numerous occasions. Moreover, on December 20, Judge Hupp thoroughly explained to Berthold the nature of the charges against him and the possible penalties that he faced. While it might have been preferable for Judge Hupp to secure a constitutionally adequate waiver earlier in the proceedings, the waiver was secured before opening statements were made or witnesses were called. Because the waiver was obtained only after full explanation by the court as to its consequences and before the trial officially began while Berthold still had the opportunity to retain a lawyer, we conclude that his waiver was knowing and intelligent.
 
 
 17
 Finally, a waiver of the right to counsel must be voluntary. Robinson, 913 F.2d at 715. Although Berthold contends that his waiver was involuntary, he does not explain in his brief how he was unconstitutionally coerced. Presumably, he believes that the fact that he was forced to choose between proceeding to trial immediately or obtaining an attorney made his waiver involuntary. This argument is without merit. First, asking Berthold to accept a delay if he chose to have an attorney was not inherently coercive: Berthold was no longer in detention and thus would not have suffered severe harm by postponing the trial for a few weeks. Second, "there is no authority for the proposition that [a defendant] is entitled to an absolutely unconditional choice between exercising his right to counsel and his right to self-representation." Id. As the Seventh Circuit held in United States v. Moya-Gomez, 860 F.2d 706 (7th Cir.1988), cert. denied, 492 U.S. 908 (1989), "[a] criminal defendant may be asked to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." Id. at 739. Because requiring Berthold to postpone the trial in order to give an attorney time to prepare would not have been constitutionally offensive, Berthold cannot challenge his waiver on this ground. We affirm the district court's finding of a voluntary, knowing and intelligent waiver of the right to counsel.
 
 4. Motion for a continuance
 
 18
 The decision whether to grant a continuance is reviewed for clear abuse of discretion. United States v. Cuevas, 847 F.2d 1417, 1421 (9th Cir.1988), cert. denied, 489 U.S. 1012 (1989). This court will not find a clear abuse of discretion "unless, after carefully evaluating all the relevant factors, [it] concludes that the denial was arbitrary or unreasonable." United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.1985). The relevant factors to be evaluated by the court are: 1) the extent of the defendant's diligence in readying his defense; 2) the likelihood that the continuance would have satisfied the defendant's need; 3) the possible inconvenience to the court, opposing party, and witnesses; and 4) the extent to which the defendant was harmed by the district court's denial of his motion. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). Finally, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." United States v. Lane, 765 F.2d 1376, 1379 (9th Cir.1985).
 
 
 19
 After considering these four factors, we conclude that the district court's denial of a continuance was neither arbitrary nor unreasonable. First, Berthold was not even remotely diligent in preparing for trial. He refused repeated offers of continuances at the time that he elected to proceed pro se, and he refused to take advantages of offers to review documents and interview witnesses because he did not like the security arrangements that were made. He also apparently made no effort to take advantage of the week-long break that occurred in the middle of trial. Second, there is no evidence that Berthold would have used the continuance effectively. For example, Berthold made no efforts to contact any of his alleged witnesses so that they could testify at trial, and even after the judge continued the trial for a day Berthold still failed to present any witnesses.
 
 
 20
 The third factor, inconvenience to the court or witnesses, counsels less strongly against the issuance of a continuance. Judge Hupp did have other trials scheduled, but he could have simply postponed Berthold's trial until after some of those had taken place. Furthermore, no witnesses were inconvenienced because the government had rested its case. However, in light of the other factors the absence of inconvenience does not weigh strongly in favor of the issuance of a continuance. Finally, Berthold has failed to demonstrate any actual prejudice. He has not suggested to the court what witnesses he was unable to call or what specific documents--that were relevant to the actual charges against him--he would have offered in his defense. Furthermore, Berthold's claim that he was prejudiced because he failed to call any witnesses or testify in his own behalf does not mean that he did not put on any defense. Berthold did cross-examine witnesses, make an opening statement, and repeatedly emphasize his theory of the case to the court. The court's denial of a continuance was neither arbitrary nor unreasonable.
 
 
 21
 The conviction of Thomas Berthold is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The terms "reasonable doubt," "good faith doubt," and "substantial doubt" all describe the same constitutional standard. Chavez, 656 F.2d at 516 n. 1
 
 
 [2]
 Berthold's occasional expressions of confusion also do not compel the conclusion that the trial judge should have experienced a substantial doubt about Berthold's competency. In Steinsvik v. Vinzant, 640 F.2d 949, 952 (9th Cir.1981), the court rejected the defendant's contention that his expressions of confusion about sentencing procedures should have raised a bona fide doubt with respect to the defendant's competency to plead guilty (which requires a higher degree of competency than the ability to stand trial). Even though Steinsvik had some history of psychiatric problems and had overdosed on barbituates thirty-six hours prior to the entrance of his plea, the court held that he had not presented sufficient evidence of incompetence to create reasonable doubt. Moreover, as in Steinsvik, Judge Hupp made an effort to explain the proceedings to Berthold whenever he expressed confusion
 
 
 [3]
 This conclusion is supported by a number of Ninth Circuit cases that found no error in the failure to order a competency hearing when the evidence of incompetence was far more compelling than that presented by Berthold. See, e.g., Hernandez v. Ylst, 930 F.2d 714 (9th Cir.1991) (defendant told court a bizarre tale of being repeatedly drugged and raped in prison); Bassett v. McCarthy, 549 F.2d 616 (9th Cir.) (defendant a known paranoid schizophrenic), cert. denied, 434 U.S. 849 (1977); DeKaplany, 540 F.2d 975 (defendant had murdered his wife in a particularly gruesome fashion, was apparently a paranoid schizophrenic, and had made irrational outbursts during trial)