8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald L. ROGERS, Defendant-Appellant.
 No. 90-50184.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided Oct. 4, 1993.
 
 Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gerald Rogers appeals twenty-nine mail and tax fraud convictions. We affirm Rogers' convictions, vacate his sentence, and remand for resentencing.
 
 I.
 
 3
 Rogers argues that the evidence was insufficient to support his convictions. In assessing such a claim, we consider whether, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quotation omitted).
 
 
 4
 Here, both Rogers' tax convictions and his mail fraud convictions were supported by sufficient evidence.
 
 A. The Tax Convictions
 
 5
 Title 26 U.S.C. § 7206(2) prohibits willfully assisting or counseling another in the preparation of a false tax return. To establish a violation of this section, the government must prove beyond a reasonable doubt that " the defendant aided, assisted, procured, counseled, advised, or caused the preparation and presentation of a return; that the return was fraudulent or false as to a material matter, and that the act of the defendant was willful." United States v. Crooks, 804 F.2d 1441, 1448 (1986), modified on other grounds, 826 F.2d 4 (9th Cir.1987).
 
 
 6
 "Willfulness," in the context of a criminal tax prosecution, means either "(1) that the defendant acted with a bad purpose or evil motive, or (2) that the defendant voluntarily, intentionally violated a known legal duty." United States v. Kellogg, 955 F.2d 1244, 1248 (9th Cir.1992) (internal quotation marks and citation omitted).
 
 
 7
 To show a defendant violated a "known legal duty," the government must " 'negativ[e] a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws.' " Id. (quoting Cheek v. United States, 498 U.S. 192, 202 (1991)).
 
 
 8
 Turning to the first of the three section 7206(2) elements, there is no question that Rogers "aided, assisted, counselled, and advised" investors in completing their tax returns. Rogers cannot and does not dispute the government's extensive catalog of evidence on this point.
 
 
 9
 The other two elements are the material falsity of the returns and Rogers' willfulness. For the most part, rather than demonstrating (or even arguing) insufficiency of the evidence on these issues, Rogers makes irrelevant assertions.[1] Some arguments do merit further attention, however, because they arguably relate to the falsity of the tax returns or Rogers' willfulness. None of these, however, establishes that in the light most favorable to the prosecution, the evidence could not have convinced a rational factfinder.
 
 
 10
 (a) Falsity. First, Rogers points to evidence apparently intended to show his tax programs were not false. He asserts that the government's expert tax witness, Dr. Karlinski, testified that the tax shelters were viable and would have been upheld by the I.R.S.
 
 
 11
 This is misleading. What Dr. Karlinski said was that the tax shelter appeared viable on paper, that is, the form of the shelter was not necessarily improper, assuming the underlying facts were as Rogers claimed them to be. But Dr. Karlinski then testified that the facts were not as Rogers claimed them to be. For example, he testified that the films were not "in the can" and ready to be shown, and that the films had not generated income by the end of 1975.
 
 
 12
 It cannot be said that no rational factfinder could accept this testimony by Dr. Karlinski, a Ph.D. and professor of tax accounting who had substantial experience in motion picture tax shelters.
 
 
 13
 Further, while Rogers alleges that his own expert appraised Rogers' films in the millions of dollars, a government expert testified that the films were worthless. Rogers does not show why no rational factfinder could have believed this latter valuation over Rogers' expert's.
 
 
 14
 Rogers has failed to show the evidence was insufficient to establish falsity of the returns.
 
 
 15
 (b) Willfulness. Rogers also highlights evidence apparently intended to demonstrate his lack of willfulness. But it is not incontrovertible evidence of Rogers' good faith that Theodore Hamlet, one of Rogers' own former employees, testified that he, Hamlet, "did not consider the program to be a fraud" and that "there was never a time when he caught appellant in a lie and that, at one point, appellant expressly stated that he was trying to avoid committing any fraud with investors['] funds."
 
 
 16
 Nor is Rogers' own testimony that tax attorney Ira Miller approved the scheme sufficient to establish, beyond rational dispute, that Rogers lacked willfulness. Whether or not Miller approved the plan--a disputed allegation--Rogers cannot get around the abundant evidence that he lied to investors about the state of completion of the films.
 
 
 17
 In providing information he knew to be false to taxpayers, Rogers acted "willfully" within the meaning of section 7206(2). See Kellogg, 955 F.2d at 1248 (defendant's creation of fictitious deductions was sufficient to show willfulness under section 7206(2), because defendant "knew of his duty not to defraud the IRS").
 
 
 18
 The evidence was not insufficient to support the district court's finding of willfulness.
 
 B. The Mail Fraud Convictions
 
 19
 Rogers next claims there was insufficient evidence to support his mail fraud convictions. This contention also fails.
 
 
 20
 To prove mail fraud, the government must show the defendant "was a knowing participant in a fraudulent scheme that utilized the mails." United States v. Boone, 951 F.2d 1526, 1539 (9th Cir.1991) (citation omitted); 18 U.S.C. § 1341. The mailings need not occur before the objective of the scheme is achieved. "Mailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.' " United States v. Lane, 474 U.S. 438, 451-52 (1986) (quoting United States v. Maze, 414 U.S. 395, 403 (1974)).
 
 
 21
 Rogers was convicted of this latter variety of mail fraud, that is, of furthering his scheme to defraud through sending "lulling letters" to investors.
 
 
 22
 Rogers does not show or explain why no rational factfinder could have considered his letters to investors to be "lulling." The letters in Counts 1-2 and 4-8 purport to confirm the fraudulent rental agreement with "Film Promotions." The agreements sent through the mail in Count 9 also concern the false film rental agreement.
 
 
 23
 A rational factfinder could find these letters to be "lulling." Rogers' mail fraud convictions consequently must be affirmed.
 
 II.
 
 24
 Rogers next claims that the district court erred in accepting his request to proceed pro se at his sentencing hearing. We review the validity of a defendant's right to counsel de novo. United States v. Robinson, 913 F.2d 712, 714 (9th Cir.1990), cert. denied, 498 U.S. 1104 (1991).
 
 
 25
 A criminal defendant's Sixth Amendment right to counsel is fundamental and may only be waived "knowingly and intelligently." United States v. Balough, 820 F.2d 1485, 1487 (9th Cir.1987). We have repeatedly held that a waiver of counsel is not knowing and intelligent unless the defendant is made aware of three factors: "the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." United States v. Lorenzo, 995 F.2d 1448, 1457 (9th Cir.1993); Balough, 820 F.2d at 1488.[2]
 
 
 26
 The district court should "discuss each of the three elements with the defendant in open court." E.g., Balough, 820 F.2d at 1488. This procedure "should be followed by district courts in every case." Id. (quotation marks omitted). Where the district court does not discuss these elements on the record, reversal will usually be required. Id.
 
 
 27
 A limited exception to this rule exists where the record as a whole reveals a knowing and intelligent waiver. Id. In making this determination, the court should consider the particular circumstances of the case, including "the background, experience and conduct of the accused." Id. (quotation marks omitted).
 
 
 28
 But this "limited exception [is] to be applied in rare cases." Id. (quotation marks omitted). The Ninth Circuit has "rarely found a knowing and intelligent waiver" except where "the background and experience of the defendant in legal matters was apparent from the record." Balough, 820 F.2d at 1488.
 
 
 29
 In the present case, the district court went over none of the three factors with Rogers. The government contends, however, that this is a rare case in which the record reflects the defendant's full awareness of all three factors.
 
 
 30
 We disagree. The government may be correct as to the first element--that Rogers understood the charges against him. Rogers had already been through a trial on those charges. But the government's arguments on the other two elements are unpersuasive.
 
 
 31
 First, it is not at all clear that Rogers knew the possible sentence he faced. The government points out that Rogers indicated at the sentencing hearing that the prosecutor wanted a 20-year sentence. But that hardly shows Rogers knew what sentence might be imposed by the judge, who was not bound by the prosecutor's recommendation.
 
 
 32
 Second, it is completely unclear whether Rogers understood the dangers of self-representation. The government asserts that Rogers had discussed with counsel his decision to continue pro se. But even if warnings by counsel--rather than by the court--are enough, there is no evidence here that any such warnings or explanations were given.
 
 
 33
 The government also claims that the district court could infer Rogers' knowledge of the dangers of proceeding pro se from the "confidence and composure [he] displayed during the long trial." But we see no logical connection between Rogers' composure at trial and his knowledge of the dangers of appearing pro se at a sentencing hearing.
 
 
 34
 The government urges that Rogers' subsequent performance at the sentencing hearing demonstrated his understanding of the complexities of the case. But an inference that a waiver was knowing may not be based on a defendant's subsequent performance, as the Ninth Circuit has held at least twice. See Balough, 820 F.2d 1485, 1489 ("The manner in which a defendant conducts his defense cannot establish his state of mind at the time he opted for self-representation.") (quotation marks omitted).
 
 
 35
 Finally, we find unpersuasive the government's remaining contentions. The fact that Rogers' arguments on one issue were briefed by counsel prior to his hearing does not show that Rogers was made aware of the dangers of doing the rest of the job himself. Similarly, that Rogers may have consulted with counsel before his argument has no bearing on whether Rogers gave a knowing waiver of his right to conduct the argument itself.
 
 
 36
 In short, this is not an exceptional case in which a knowing and intelligent waiver can be presumed absent the required district court colloquy. Accordingly, the case must be remanded for a new sentencing hearing.
 
 III.
 
 37
 Rogers claims that excessive appellate delay requires reversal of his convictions under the Due Process clause and pursuant to this court's supervisory powers.
 
 A. Due Process
 
 38
 The Ninth Circuit recognizes that excessive appellate delay may violate due process. United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir.), cert. denied, 498 U.S. 963 (1990). Antoine adopted a four-part test for assessing claims of undue appellate delay. The court must consider "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant." Id.
 
 
 39
 The most crucial element of a claim of excessive appellate delay is the prejudice suffered by the appellant. Antoine, 906 F.2d at 1382. Indeed, "a due process violation cannot be established absent a showing of prejudice...." Id.
 
 
 40
 Antoine set out "three categories of potential prejudice stemming from a delayed appeal: (1) oppressive incarceration pending appeal, (2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and (3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." Id.
 
 
 41
 None of these categories of prejudice is shown here. Rogers' incarceration was not prejudicial because he was already serving a 25 year sentence on an unrelated conviction. See United States v. Rogers, 960 F.2d 1501 (10th Cir.), cert. denied, 113 S.Ct. 817 (1992)).[3] In addition, where, as here, the appellant's convictions are sound, incarceration does not establish prejudice because the appellant would have remained in prison anyway. See Coe v. Thurman, 922 F.2d 528, 532 (9th Cir.1990) (citing Antoine, 906 F.2d at 1382).
 
 
 42
 Similarly, although Rogers "undoubtedly experienced anxiety and concern during the protracted pendency of this appeal," it was "no more than any other prisoner awaiting the outcome of his appeal." Coe, 922 F.2d at 532 (internal quotation marks omitted).
 
 
 43
 Finally, because we find that there was no impairment of Rogers' grounds for appeal, and because there will not be a retrial, the third type of prejudice is not present here.
 
 
 44
 Accordingly, we reject Rogers' due process claim.
 
 B. Supervisory Powers
 
 45
 Rogers also argues, apparently distinctly from his due process claim, that the delay in this case warrants our exercise of supervisory powers to reverse his convictions.
 
 
 46
 We decline to exercise our supervisory powers in this case. We are not happy with the 2 1/2 year delay necessitated by the recalcitrance of the court reporters. But in the absence of prejudice to Rogers, whose convictions were sound and who in any event was serving another sentence during the delay, we find this an unsuitable occasion for the exercise of our supervisory authority.
 
 IV.
 
 47
 In addition to the briefs filed by counsel, Rogers filed a "Supplemental Brady Material Production Brief," seeking reversal of his conviction based on alleged violations of Brady v. Maryland, 373 U.S. 83 (1963). We review alleged Brady error de novo. United States v. Marashi, 913 F.2d 724, 731-32 (9th Cir.1990).
 
 
 48
 Rogers' Brady claims are very difficult to understand. The thrust of Rogers' argument appears to be that the United States unlawfully conspired with the Supreme Court of Panama--in particular, its Chief Justice--to keep Rogers' funds there tied up and unavailable to him.
 
 
 49
 Rogers appears to argue that he was entitled under Brady to certain documents evidencing this conspiracy. But what those documents are is not clear. At one point he seems to assert they were state department documents, but at another, he indicates he had the documents and attached them to a Brady motion he made in the district court.
 
 
 50
 In any event, Rogers claim must fail. Evidence withheld in violation of Brady warrants reversal only when material to guilt or punishment, Marashi, 913 F.2d at 732, something not the case here. "Material to guilt or punishment" means that " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Id. (quoting United States v. Bagley, 473 U.S. 667 (1985)). Rogers fails to show that there exists evidence of a conspiracy between the United States and Panama, and further fails to show that such evidence, even if it existed, would have undermined his convictions for tax and mail fraud. His Brady claim is therefore rejected.
 
 V.
 
 51
 Rogers' convictions are AFFIRMED.
 
 
 52
 His sentence is VACATED, and the case is remanded for a new sentencing hearing. At the hearing, Rogers must either be represented by counsel or must demonstrate on the record that his waiver of counsel is knowing and intelligent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It is irrelevant, for example, that "a great many of the investors in appellant's tax shelter were attorneys and certified public accountants." It is also irrelevant that "the situation during the last few weeks of 1975 were chaotic" and that in December 1975 "appellant's office was in pandemonium." And it is irrelevant that "appellant was able to account for all of the proceeds received from the tax program to the very penny."
 
 
 [2]
 At a sentencing hearing, of course, the court must also perform the colloquy required by Fed.R.Crim.P. 32(a)
 
 
 [3]
 Although the Tenth Circuit case does not make clear the date Rogers' incarceration began, Rogers' does not dispute the government's assertion that he was incarcerated throughout the pendency of the present appeal