UNITED STATES of America, Plaintiff—Appellee,

v.

Joseph COPPOLA, Defendant—Appellant.

No. 05–10244.

United States Court of Appeals, Ninth Circuit.

Submitted July 25, 2006.*

Filed Aug. 24, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Robert L. Ellman, Esq., Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Diane L. Dragan, Esq., Daniel J. Albregts, Ltd., Las Vegas, NV, for Defendant–Appellant.

Before: HUG, KLEINFELD, and PAEZ, Circuit Judges.

### MEMORANDUM **

Joseph Coppola was charged with committing two bank robberies in December 2002. On March 29, 2004, a jury convicted him on both bank robbery counts. On March 22, 2005, he was sentenced to 188 months imprisonment.

Coppola appeals his convictions and his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm both his convictions and his sentence.

### Discussion

### A. Prosecutorial Misconduct

Coppola claims that the prosecution repeatedly violated the district court's pretrial order and the Federal Rules of Evidence by improperly introducing and using impermissible character evidence concerning a 1999 armed robbery conviction and other bad acts, including a second 1999 bank robbery. A district court's decision regarding the admission of evidence regarding prior bad acts is reviewed for an abuse of discretion. *United States v. Geston,* 299 F.3d 1130, 1137 (9th Cir.2002). When defense counsel objects at trial to acts of alleged prosecutorial misconduct, we review for harmless error. *United States v. Weatherspoon,* 410 F.3d 1142, 1150 (9th Cir.2005).

When a defendant alleges prosecutorial misconduct, the alleged misconduct is viewed in the entire context of the trial and "the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Henderson,* 241 F.3d 638, 652 (9th Cir.2000) (quotation omitted); *see also United States v. Younger,* 398 F.3d 1179, 1190 (9th Cir.2005). Thus, even where there is prosecutorial misconduct and the defendant objects, the error is harmless and the conviction stands if there is overwhelming evidence of the defendant's guilt. *See United States v. Chu,* 5 F.3d 1244, 1250 (9th Cir.1993).

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

■ Here, the parties disagree over whether various testimony and other evidence was inadmissible, whether the introduction and use of that evidence amounted to prosecutorial misconduct, and whether any error was invited or introduced over the defendant's objection. We need not resolve these issues. Ignoring all the character evidence, including past criminal conduct evidence, propensity evidence, and bad acts evidence, there is overwhelming evidence of Coppola's guilt for both bank robberies. There was surveillance video of both robberies. Coppola's friend and employer identified him in surveillance photos of both robberies. The courtesy clerk at the second robbery identified him in court. During the second robbery Coppola was followed from the bank to his own car, which contained jeans and a towel stained with dye pack residue, thus linking Coppola to the first robbery. Coppola himself told the jury that "it is obvious that the same modus operandi, or M.O., was used in both robberies—and looking at the photographs of both bank robberies it is obviously the same person." Given this overwhelming evidence of guilt, we hold that, if there was any misconduct, it was harmless.

### B. Coppola's Right to Self-Representation

Prior to trial, Coppola replaced his counsel multiple times and received multiple continuances. Four months before the trial the court agreed to let Coppola represent himself, but also provided him with standby counsel. Coppola claims that his Sixth Amendment right to self-representation was violated because he was denied basic access to the courts and the ability to prepare a defense.

### 1. The Pretrial Motions

■ Coppola contends that the trial court impermissibly prevented him from filing an untimely speedy trial motion and an untimely motion to suppress the admission of money orders seized from his room at a halfway house. We review a district court's denial of an untimely motion for abuse of discretion. *United States v. Croft*, 124 F.3d 1109, 1120 (9th Cir.1997).

Coppola does not deny that his attorneys had many months to file pre-trial motions and chose not to file a speedy trial motion or a motion to suppress. He argues only that he should have been allowed to file untimely motions after he started representing himself. He provides no evidence of ineffective counsel. Moreover, the evidence is clear that Coppola continuously caused delays in the trial by repeatedly replacing counsel and seeking and receiving continuances.

Coppola also claims that the court's refusal to permit him to file an untimely motion to suppress denied him his right to preserve the search and seizure issue for appeal. However, when Coppola complained at trial about the money order evidence, the court clearly ruled that the evidence was admissible. Coppola has chosen not to appeal that ruling. Thus, contrary to Coppola's arguments, the district judge did not deny him the opportunity to preserve the search and seizure issue for appeal. We therefore hold that the district court did not abuse its discretion by precluding Coppola from filing untimely pre-trial motions.

### 2. Access to Pretrial Resources and the Continuances

■ Coppola claims he was denied access to the tools necessary to defend himself and should have been provided another continuance to allow him to be adequately prepared for trial. We review for abuse of discretion a district court's decision to grant or deny a motion for a continuance. *United States v. Garrett*, 179 F.3d 1143, 1144–45 (9th Cir.1999) (en banc). We also review for abuse of dis-

cretion a denial of a request for pretrial resources. *United States v. Croft,* 124 F.3d 1109, 1125 n. 7 (9th Cir.1997). We review a district court's findings of fact for clear error. *United States v. Murillo,* 255 F.3d 1169, 1174 (9th Cir.2001).

The rights to notice, confrontation, and compulsory process "mean, at a minimum, that time to prepare and *some access* to materials and witnesses are fundamental to a meaningful right of self representation." *United States v. Robinson,* 913 F.2d 712, 717 (9th Cir.1990) (internal quotation omitted). A "pro se defendant's right of 'some access' to resources to aid the preparation of his defense must, however, be balanced against security considerations and the limitations of the penal system." *Id.* Providing assistance of counsel to aid in the preparation of the defense may provide reasonable access to resources. *Id.* Other reasonable alternatives that are consistent with jail or prison management may also meet the requirement of reasonable access to resources. *Id.*

The district court took considerable time to identify why Coppola felt he needed continuances and exactly what tools Coppola claimed he needed and why. The record shows that Coppola was provided with significant resources, including standby counsel, legal research materials, and computers, and that the denial of specific resources at particular times did not result in any prejudice to him.

We therefore hold that it was not an abuse of discretion for the judge to deny Coppola's requests for continuances and that Coppola was provided with resources sufficient to provide him with a meaningful right of self-representation.

### C. Judicial Bias

Coppola argues that the district court showed an appearance of partiality that was inherently prejudicial to him. In particular, Coppola contends that the district court displayed partiality by: 1) showing impatience and admonishing Coppola when he was questioning witnesses; 2) not permitting Coppola access to the podium during trial; and 3) stopping him from objecting during closing argument. Coppola does not contend that inadmissible evidence was admitted, that admissible evidence was excluded, or that the prosecution's closing argument genuinely was objectionable. He claims only that the court's conduct showed partiality.

An "extremely high level of interference" is necessary for judicial conduct to justify a new trial. *United States v. DeLuca,* 692 F.2d 1277, 1282 (9th Cir.1982); *see also United States v. Laurins,* 857 F.2d 529, 537 (9th Cir.1988).

■ In Coppola's case, the judge repeatedly urged him to move on because he was testifying to or eliciting irrelevant, inadmissible, or repetitive information. In addition, during closing argument, the judge did not allow Coppola to argue facts that were not in evidence. Thus, the judge exercised his discretion to try to ensure the orderly presentation of evidence, ensure compliance with the rules of evidence, and prevent undue repetition. Moreover, in general, the judge provided Coppola with a great deal of latitude in his testimony and his questioning of witnesses.

"A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." *Laurins,* 857 F.2d at 537. In order for a claim of judicial bias to be successful, a defendant must prove that there was "a pervasive climate of partiality or unfairness." *DeLuca,* 692 F.2d at 1282. Coppola was not given access to the podium on the first day of trial, but the judge restricted both the prosecution and defense to counsel tables after the first day. The judge admonished Coppola once during closing argument not to interfere with

the Government's argument. In the broad scope of a five-day trial, this does not show a pervasive climate of partiality or unfairness.

We hold that there was no judicial bias and that the judge did not abuse his discretion.

### D. The Photographic Lineups

Prior to trial, the district court denied Coppola's motion to suppress the photographic identifications made by the two tellers. We review *de novo* the constitutionality of a pre-trial identification procedure. *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir.1998). We review the unconstitutional admission of evidence for harmless error. *See United States v. Bishop*, 264 F.3d 919, 927 (9th Cir.2001); *United States v. Washington*, 353 F.3d 42, 45–46 (D.C.Cir.2004) (applying harmless error analysis in context of photo identifications); *cf. Simmons v. U.S.*, 390 U.S. 377, 386 n. 6, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

█ Here, regardless of how suggestive and unreliable the photo lineups themselves were, any error in admitting evidence regarding the photographic lineup was harmless. Surveillance tape from both robberies revealed that Coppola was the robber. Coppola's employer and friend not only identified Coppola in surveillance photos from both robberies, but also identified his clothing and sunglasses. In addition, the courtesy clerk at the second robbery was not subject to a photographic lineup and, at trial, identified Coppola as the robber. Even Coppola acknowledged that the robber looked just like him. He told the jury that "looking at how close the person looks, I—I couldn't believe it. It was like—I felt like, oh my God, this is like the perfect setup, the devil was doing it ..." Combined with the other evidence, a suggestive photo lineup clearly would be harm-

less. We therefore hold that admission of the photo lineup evidence was not reversible error.

### E. Sentencing

Coppola appeals his sentence, contending that it was improper for the judge to impose a threat of death enhancement and to increase the offense level by an additional four levels.

In *United States v. Cantrell*, 433 F.3d 1269, 1279–80 (9th Cir.2006), we adopted a two-step procedure for reviewing sentences imposed after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We first review the district court's calculation of the Guidelines range. *Cantrell*, 433 F.3d at 1279–80. If the district court correctly calculated the Guidelines range, or any error in calculating the Guidelines range was harmless, we then review the ultimate sentence for reasonableness. *Id.* We review the district court's interpretation of the Sentencing Guidelines *de novo*. *See United States v. Menyweather*, 447 F.3d 625, 630 (9th Cir. 2006). We review the application of the Guidelines to the facts of the case for abuse of discretion and review factual findings for clear error. *Id.*

### 1. The Enhancement for Threat of Death

█ The district court imposed a two-level increase pursuant to section 2B3.1(b)(2)(F) of the Sentencing Guidelines. Section 2B3.1(b)(2)(F) not only provides for enhancements when certain weapons are used, possessed, brandished, or discharged, but also provides for a two-level enhancement if "a threat of death was made." The district court reasoned that there was a threat of death that fell "within part of the *res gestae*" of the second robbery offense when Coppola told the courtesy clerk who was chasing him to the parking lot during the second robbery, "Stay back. I have a gun. I'll kill you."

Coppola contends that the enhancement should not have applied because the clerk was not a victim of the offense. To support his argument, Coppola relies on Application Note 6 to section 2B3.1(b)(2)(F), which states that "the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." Coppola argues that the clerk could not be a victim of the robbery because the clerk did not even know that there had been a bank robbery when he chased Coppola to his car.

However, neither section 2B3.1(b)(2)(F) itself nor the application note requires that the target of the death threat know that a robbery is occurring in order for the threat of death to result in an enhancement. In addition, section 2B3.1(b)(2)(F) does not even mention "victims," much less limit the definition of "victim" to those who have lost money in a robbery. We therefore hold that the threat of death enhancement was proper.

### 2. The Four–Level Increase

■ At sentencing, the judge determined that a two-level obstruction of justice enhancement was appropriate pursuant to U.S.S.G. § 3C1.1 because Coppola repeatedly perjured himself during trial and repeatedly attempted to influence other witnesses to commit perjury. The PSR recommended a four-level upward departure based on U.S.S.G. § 5K2.0(a)(3) because of Coppola's plans to kidnap, torture, and kill the prosecutor and F.B.I. agent on his case. Because the PSR was prepared prior to the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the PSR made no recommendations based on the non-Guidelines factors contained in 18 U.S.C. § 3553(a). However, the district court sentenced Coppola after the Supreme Court decided *Booker.* As a result, the district court combined the discussion of the departure and the section 3553(a) factors when he decided upon a four-level increase in the offense level.

Following *Booker,* the scheme of departures has now been replaced by the requirement that judges impose a reasonable sentence. *United States v. Mohamed,* 459 F.3d 979, 987 (9th Cir.2006). Therefore, where a district court has framed its analysis in terms of a "departure," we treat the departure "as an exercise of post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range" and the sentence "is subject to a unitary review for reasonableness." *Id.*

In the instant case, the sentence is reasonable. Coppola committed these two bank robberies while still serving a sentence for armed bank robbery, and he threatened someone with death during his latest robbery. Although Coppola never attempted to carry out the kidnaping and murder plans, his planning demonstrates his personal characteristics and suggests that he is a danger to the public and does not have proper respect for the law. His perjury, attempts to improperly influence witnesses, and refusal to take responsibility for his misconduct throughout the robberies and trial also suggest that he is a danger, has little respect for the law, and is in need of deterrence. The sentence takes into account the section 3553(a) factors, including Coppola's history, his personal characteristics, the seriousness of the offense, and the need for deterrence. We therefore hold that the sentence was reasonable and affirm the sentence.

### Conclusion

The convictions and the sentence are **AFFIRMED.**