**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Craig Bradley GEORGE, aka: Steve Eugene Johnson, Defendant–Appellant.**

**No. 93–50707.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1996.

Decided June 11, 1996.

1434

David M. Dudley and Philip Kent Cohen, Los Angeles, California, for defendant-appellant.

Joseph A. Brandolino, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before BROWNING, WALLACE and FARRIS, Circuit Judges.

WALLACE, Circuit Judge:

George appeals from his conviction of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We

have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

On January 22, 1991, an indictment was filed charging George with two counts of bank robbery. Trial was scheduled for April 30, but on that day, George requested that the court appoint new counsel. The district court granted George's request and reset the trial for July 16, 1991.

On July 15, George, through counsel, moved for a continuance, insisting that he was not prepared for trial. The district court granted George's motion and set the trial for August 20, 1991. George also asked for a new attorney, which the court denied.

On August 2, George again asked that his trial be postponed. The district court recalendared the trial for September 17. On September 19, George once more requested a continuance. He also asked the court to acknowledge him as co-counsel and to appoint a private investigator to assist in his defense. The court granted all of George's motions, continuing the trial until October 8, appointing an investigator, and giving George co-counsel status. On September 24, the court signed an order which ensured that George received all the benefits of pro se status.

On October 8, George filed ten handwritten motions, including motions for a continuance, a medical and psychological examination, dismissal of his co-counsel, permission to proceed pro se, discovery, dismissal of the judge, copies of transcripts of all prior proceedings in the case, and a new bail hearing. The district court denied all of these motions.

On October 9, prior to the presentation of evidence, the court heard and decided various motions in limine that the government had filed on April 25. George filed two more handwritten motions, asking the court to dismiss his counsel and asking for a new trial. The court denied George's motions.

On October 15, George filed, and the court denied, more handwritten motions, including a motion for a mistrial and a motion requesting appointment of an anthropologist, a psy-

chologist, and a polygraph specialist. George also filed another motion to proceed pro se. The court responded by making George's appointed attorney advisory counsel, rather than co-counsel. On the same day, after the close of the government's case-in-chief, George waived his right to a jury trial and the trial proceeded as a bench trial.

The following day, George filed more handwritten motions, including a motion for another continuance. The court denied the motions and ultimately convicted George of both counts of robbery.

## II

George first argues that he did not receive a speedy trial. We review questions of law concerning the application of the Speedy Trial Act (Act) de novo. *United States v. Springer*, 51 F.3d 861, 864 (9th Cir.1995) (*Springer* ).

The Act, 18 U.S.C. §§ 3161–3174, requires that George's trial commence within 70 days from the later of the filing of an indictment or his first appearance, barring excludable time. *Henderson v. United States*, 476 U.S. 321, 326, 106 S.Ct. 1871, 1874–75, 90 L.Ed.2d 299 (1986) (*Henderson* ); 18 U.S.C. § 3161(c)(1). George was arraigned on January 28, 1991, and his trial began 253 days later, on October 8. *See United States v. Manfredi*, 722 F.2d 519, 524 (9th Cir.1984) (for purposes of the Act, trial "commences" on day voir dire begins). George does not dispute that the time from January 28 to July 14 was properly excluded due to the filing of various pretrial motions. However, George argues that the 85 days between July 15 and October 8, 1991, were nonexcludable and that the delay was impermissible.

On April 25, the government filed three motions in limine. The court heard and decided these motions on October 9, after the jury had been impaneled, but before the presentation of any evidence. The Act specifically excludes time "from the filing of [any pretrial] motion through the conclusion of the hearing on" the motion. 18 U.S.C. § 3161(h)(1)(F); *see also Springer*, 51 F.3d at 865 (where court hears and decides a

motion in limine before trial, time between the filing and the hearing is excludable); *Henderson*, 476 U.S at 329–30, 106 S.Ct. at 1877 (for pretrial motions that require a hearing, delay can be excluded "whether or not a delay in holding that hearing is 'reasonably necessary' "). As we explained in *Springer*, the exception in *United States v. Clymer*, 25 F.3d 824, 830–31 (9th Cir.1994) (holding that time between filing of pretrial motion and hearing was not excludable), applies only when a motion is decided after trial. *Springer*, 51 F.3d at 865. Thus, the time between April 25 and October 9 was excludable and George was tried within the time required by the Act.

## III

On one of the many mornings that trial was to commence, George filed a motion requesting that the court appoint a psychologist to determine his competency to stand trial. George argues that the district court should have granted the motion.

### A.

George and the government disagree as to the standard of review we must apply when reviewing the district court's refusal to order an examination pursuant to 18 U.S.C. § 4241. The issue is one of first impression in our circuit.

To determine the level of deference, if any, to be given to a district court's decision to order or refuse a psychological examination, we begin with the statute's language. Section 4241 provides:

> (a) ... At any time after the commencement of a prosecution for an offense and prior to [ ] sentencing ..., the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, *if there is reasonable cause* to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent....

(b) ... Prior to the date of the hearing, the court *may order that a psychiatric or psychological examination of the defen-. dant be conducted* ....

(Emphasis added.) If reasonable cause exists, section 4241(a) requires a district court to conduct a competency hearing. However, even if the existence of reasonable cause requires a competency hearing, the court clearly has discretion to determine whether an examination is also necessary. The statute's language therefore indicates that we should review a district court's decision to deny an examination for abuse of discretion. *See Tashima v. Administrative Office of the United States Courts,* 967 F.2d 1264, 1273 (9th Cir.1992) (statute's use of term "may" indicates congressional intent to give decisionmaker discretion).

This deferential standard of review is appropriate in light of the standard of review we applied when reviewing denials of examinations requested pursuant to section 4241's precursor, 18 U.S.C. § 4244. Section 4244 read:

Whenever after arrest and prior to the imposition of sentence ... the United States Attorney *has reasonable cause to believe* that a person charged with an offense ... may be presently insane or otherwise [ ] mentally incompetent ..., he shall file a motion for a judicial determination of such mental competency ..., setting forth the ground for such belief.... Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court *shall cause the accused ... to be examined* as to his mental condition by at least one qualified psychiatrist....

(Emphasis added.) The psychiatric examination requested pursuant to section 4244 was essentially mandatory. *See United States v. Ives,* 574 F.2d 1002, 1005 (9th Cir.1978) ("an initial § 4244 motion gives the moving party a right to a mandatory psychiatric examination of the defendant"). A district court could only deny a defendant's first motion for a mental examination if it correctly determined that the motion was "frivolous, [was] not in good faith, or [did] not set forth the grounds relied upon for believing that the

accused may be incompetent." *United States v. Bradshaw,* 690 F.2d 704, 712 (9th Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). After the mandatory examination and determination, the district court had the discretion to grant or deny subsequent motions for psychiatric examination. *Chavez v. United States,* 656 F.2d 512, 517 (9th Cir.1981).

The present section 4241 contains no mandatory examination. The district court now has discretion as to all motions for psychiatric examinations, not just motions made after an initial examination. Thus, we review a denial of an examination under section 4241(b) for abuse of discretion. *See United States v. Williams,* 998 F.2d 258, 266 (5th Cir.1993) (reviewing denial of mental examination under 18 U.S.C. § 4241 for an abuse of discretion), *cert. denied,* —— U.S. ——, 114 S.Ct. 940, 127 L.Ed.2d 230 (1994).

**B.**

George argued in the district court that a psychological examination was warranted for two reasons. First, he worried that the judge would at some point remove him from the courtroom. In response, the district court stated that George would "be present at the trial" and that it was not "looking to kick [him] out of the courtroom." Second, George seemed to be upset that he had been placed in a detention center that also housed "seriously ill, psychiatric patients." George stated, "the conditions that they have me in around these psychiatric patients ... [is] very confined, it's affecting me. You know I haven't been able to sleep since last Friday." The court told George that it had no authority to improve his accommodations. It also stated that it did not "see any reason to have a psychiatric examination" of George.

■ George now contends that he had an absolute right to a psychological evaluation because the court could not, as a matter of law, accept his own pro se attempt to establish reasonable cause. *See* 18 U.S.C. § 4241(a). George asserts that he could not possibly have made an adequate showing if he was in fact incompetent, so it must follow that he has an absolute right to a psycholo-

gist's evaluation. George's argument, if accepted, would give a competent defendant an absolute right to a medical evaluation merely by filing a frivolous motion pro se. A defendant's pro se status does not strip a court of its ability to determine whether reasonable cause exists under section 4241(a).

George also insists that *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (*Ake*), and *Smith v. McCormick,* 914 F.2d 1153 (9th Cir.1990), provide a constitutional right to an examination for any defendant. *Ake* involved an indigent capital defendant's right to have an expert appointed to assist him in an insanity defense. Even assuming that *Ake* applies to noncapital cases, George does not argue that his mental condition would be a "significant factor" in the proceeding. *See Williams v. Calderon,* 52 F.3d 1465, 1473–74 (9th Cir.1995), *quoting Ake,* 470 U.S. at 74, 105 S.Ct. at 1091–92, *cert. denied,* —— U.S ——, 116 S.Ct. 937, 133 L.Ed.2d 863 (1996). *Smith* held that an indigent capital defendant had a right to expert psychiatric assistance in preparing his claims of mitigating circumstances. 914 F.2d at 1156. *Smith* has no applicability here.

■ The district court had viewed George's demeanor, read many of his countless letters to the court, and heard his oral arguments. The court found that George was "not nuts," was a "bright man," was as "lucid as can be," and was "calm and articulate." The court stated that it did not "have any doubt about [George's] intelligence." The district court had before it no reason to believe that an examination of George would reveal that he was incompetent to stand trial. To the contrary, his myriad motions and oral presentations before the court indicated that George was quite competent. The district court did not abuse its discretion.

## IV

■ George argues that the district court should have appointed new counsel in response to his numerous requests and constant complaints. We review for abuse of discretion the district court's denial of George's motions. *United States v. Roston,* 986 F.2d 1287, 1292 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 206, 126

L.Ed.2d 163 (1993). When deciding whether the district court abused its discretion in denying a request for substitution of counsel, we consider: "(1) [the] timeliness of the motion; (2) [the] adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate legal defense." *Id., quoting United States v. Gonzalez,* 800 F.2d 895, 898 (9th Cir.1986). The "district court has broad discretion to deny a motion for substitution made on the eve of trial if the substitution would require a continuance." *United States v. Schaff,* 948 F.2d 501, 504 (9th Cir.1991) (internal quotation omitted).

The court granted George's April 30 motion for new counsel. On July 15, George again complained. This time, the court stated that George was "jacking around the system," and refused to appoint new counsel. On August 2 and September 19, George addressed the court and contended that he was having difficulty contacting his attorney. The court summarily refused to appoint new counsel.

On October 8, George filed ten handwritten motions, one of which was a "Motion For Continuance For Trial To Prepare Motions And To Contact Wittnesses [sic]; And To Dismiss Co-council [sic] and To Proceed Pro. Se. [sic] Alone." This motion was filed on the day trial was to commence. The district court heard George's insistence that counsel had a conflict of interest, that counsel was prejudiced against him, that there was a communication problem, and that counsel "didn't like" him. The court also heard from George's counsel, who stated that he investigated the alleged conflict, that he and George "communicated frequently," and that he "visited George often." George's complaints were frivolous or caused by his own antics. For example, at one point George complained that he could not reach his attorney, yet counsel indicated that he was forced to turn off his answering machine because George called continuously and used up all of the answering machine tape.

■ Applying *Roston*, it is clear that this motion was untimely (the day of trial), the district court made adequate inquiry, and there was no total lack of communication. Although George may have been a difficult client, the record indicates that the line of communication between George and counsel remained open. George has not indicated how, if at all, his defense at trial was inadequate. *See United States v. Mills*, 597 F.2d 693, 700 (9th Cir.1979) (no abuse of discretion where motion filed week before trial, where granting it would have caused delay, and where defense counsel presented an adequate defense).

George correctly argues that the district court failed to conduct an inquiry on each of the three occasions that George complained orally about his counsel's conduct. Instead, the district court clearly indicated its frustration with what it deemed to be George's frivolous and strategic attempts to delay his trial. We do not require a district court to inquire into a defendant's repeated complaints where they are clearly brought for the purpose of delay. At any rate, immediately before trial eventually commenced George was given an opportunity to explain why he desired new counsel. The district court heard George's complaints, heard from counsel, and its refusal to appoint substitute counsel was not an abuse of discretion. *See United States v. Castro*, 972 F.2d 1107, 1109–10 (9th Cir.1992) (no abuse of discretion where motion untimely, where district court questioned defendant and counsel, and where alleged conflict did not undermine communications), *cert. denied*, 507 U.S. 944, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993).

## V

■ George argues that the district court denied him his right to proceed pro se and that the error is per se reversible. The decision to allow a pro se litigant to proceed with some form of hybrid representation (co-counsel or advisory counsel) is reviewed for abuse of discretion. *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 154, 98 L.Ed.2d 110 (1987).

On September 19, the court stated to George: "I will sign an order permitting you to appear pro se as co-counsel, not with advisory counsel but co-counsel with [defense counsel].... That is the way it is and the case is going to trial on the 8th of October." The order itself explicitly gave George "pro se status."

■ George insists that he was not given "true" pro se status until October 15. At that time, however, the court simply changed appointed counsel's role from co-counsel to advisory counsel. Given the court's never-ending difficulties with George, it was not an abuse of discretion to appoint co-counsel to "protect the integrity of the trial process." *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir.), *cert. denied*, 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). It was also not an abuse of the court's discretion later to change appointed counsel's role to advisory counsel.

George insists that his status as co-counsel was ineffectual and that he was therefore denied his right to proceed pro se. However, the record indicates otherwise. The court considered and treated George as having pro se status. He addressed the court on many occasions and argued his own motions. George insists that because his co-counsel was ineffective and should have been dismissed, he was denied full pro se status. But the district court had effectively found that George's counsel was representing George adequately.

## VI

■ Finally, George argues that the district court abused its discretion by not continuing his trial after appointed counsel was given advisory counsel status. We review the district court's decision to deny a continuance by weighing various considerations on a case-by-case basis. *United States v. Mejia*, 69 F.3d 309, 314–15, 314 n. 5 (9th Cir.1995). We analyze:

(1) the extent of appellant's diligence in his efforts to ready his defense prior to the date set for hearing; (2) how likely it is that the need for a continuance could have been met if the continuance had been

granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party, including witnesses; (4) the extent to which the appellant might have suffered harm as a result of the district court's denial.

*Id.* at 314 (ellipses and citation omitted). The weight accorded to each consideration may vary from case to case; but, "in order to obtain a reversal, appellant must show at a minimum that he has suffered prejudice as a result of the denial of his request." *United States v. Flynt,* 756 F.2d 1352, 1359 (9th Cir.1985), *amended,* 764 F.2d 675.

■ George has not met his burden to establish that the court's refusal to continue the trial was prejudicial. George does not indicate how a continuance would have helped him. Rather, he argues that a pro se litigant is automatically entitled to a continuance because it would be in "vain to give the accused a day in court with no opportunity to prepare for it." *Armant v. Marquez,* 772 F.2d 552, 557 (9th Cir.1985) (citation omitted), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 902 (1986). However, because George had been given pro se status before the trial began, the court was not required to continue the case in the middle of trial after it reduced appointed co-counsel's role to advisory counsel.

Nor has George shown how a continuance would have assisted him. His trial had been delayed for nine months and he had the assistance of two different attorneys and a court-appointed investigator. The district court therefore did not abuse its discretion in refusing to continue the trial after appointed co-counsel was made advisory counsel.

AFFIRMED.