**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Floyd Lentellis GARRETT,
Defendant–Appellant.**

No. 96–50609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1997.

Decided July 16, 1998.

Janice D. Hogan, San Diego, California, for defendant-appellant.

Mary A. Schneider, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: REINHARDT and TASHIMA, Circuit Judges, and SHADUR, District Judge.[*]

REINHARDT, Circuit Judge:

Defendant Floyd Lentellis Garrett appeals his conviction for armed bank robbery, using and carrying a firearm during the commission of a crime of violence, and aiding and abetting the commission of these crimes, in violation of 18 U.S.C. §§ 2113(a) and (d), 924(c)(1), and (2). He contends that initially he did not waive his right to counsel knowingly and intelligently, and that subsequently the district court abused its discretion in denying his motion for a one-month continuance so that he could be represented by counsel. We have jurisdiction over his appeal pursuant to 28 U.S.C. § 1291. We vacate Garrett's conviction and remand for further proceedings.

## BACKGROUND

On July 21, 1995, Floyd Lentellis Garrett and his co-defendant, Barry I. Hendricks, were charged in a two-count indictment with the crimes set forth above. Hendricks en-

tered into a plea agreement. Garrett was present at Hendricks's plea hearing and was represented by counsel, Bill Brown.

At that time Brown advised the court of a serious breakdown in communication between Garrett and himself. During the subsequent months, the relationship between Brown and his client continued to worsen, and, on February 20, 1996, Garrett moved to relieve Brown as his counsel, noting communication problems and disagreements over strategy. Two days later, the court appointed attorney Thomas Senters to help Garrett determine if he wanted to proceed *pro se*. The day after that, the court appointed Senters attorney of record.

Garrett experienced difficulties with Senters as well, and, on April 15, 1996, filed a motion to waive his right to counsel and to proceed *pro se*. The court conducted two separate hearings, on April 15th and 22nd, to determine whether Garrett understood the ramifications of self-representation. At both hearings, the court conducted a lengthy colloquy with him regarding the nature of the charges, the penalties he faced, and the disadvantages of self-representation. At the April 22 hearing, the court granted the motion.

On June 7, on its own motion and over Garrett's objection, the court appointed Senters as stand-by counsel. At this hearing, which was held eleven days before the scheduled trial date, Garrett notified the court of his intention to retain private counsel:

> GARRETT: I am in the process, I have found out there, you know, a society that's right now in the process of getting me an attorney.... That's—I'm—I'm telling the Court that I'm trying to retain some counsel other than panel counsel."
>
> THE COURT: If you want to retain your own counsel, that's up to you to retain your own counsel. The timing of that, I'm alerting you in advance, that the Court will consider timing if somebody comes in and then says, "Well, we need a continuance of the trial." It depends on—I will look at that and evaluate that.

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

The court did not preclude Garrett from retaining new counsel but warned that it was concerned about delays.

On Monday, June 17, the day before trial was scheduled to convene, Garrett notified the court that he had retained new counsel but that his attorney could not begin trial until July 16. Garrett moved for a one-month continuance in order to permit his attorney to fulfill prior commitments and to prepare adequately. The court telephoned Attorney Arthur Ramsey who confirmed that Garrett's father had contacted him the preceding Thursday or Friday about representing Garrett, that he had been retained, and that he could begin trial on July 16.

The court denied Garrett's request for a continuance, stating that the trial would commence the following day. It did—after a brief additional discussion regarding the court's denial of the request. At trial, Garrett contested only Count II, the charge of possessing a weapon in the commission of the crime. The court found him guilty of both counts and imposed a mid-range sentence of 180 months on Count 1, and a consecutive five-year sentence as required by law under 18 U.S.C. § 924(c) on Count 2. Garrett appealed.

### ANALYSIS

We first consider whether Garrett initially waived his right to counsel knowingly and intelligently and whether the district court conducted an adequate inquiry on this issue. Second, we review the district court's subsequent decision to deny Garrett's motion for a continuance so that he could be represented by newly retained counsel.

### I.

■ A criminal defendant has the constitutional right under the Sixth Amendment to be represented by counsel or to represent himself, if he so chooses. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). If the defendant elects to waive his right to counsel, his decision must be made knowingly and intelligently. *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir.1994). "Because a defendant normally gives up more than he gains when he elects self-representation, the district court is required to make reasonably certain that he in fact wishes to represent himself." *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir.1990). Consequently, the government bears the burden of showing that defendant's waiver was knowing and intelligent. *United States v. Mohawk*, 20 F.3d 1480, 1484 (9th Cir.1994).

■ In order to waive the right to counsel knowingly and intelligently, the defendant must be made aware of three elements: the nature of the charges, the possible penalties, and the disadvantages of self-representation. *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir.1987). To ensure that the defendant is aware of these elements, the trial judge must conduct an open court colloquy. *Id.* at 1488. Whether a waiver of the right to counsel was made knowingly, intelligently, and voluntarily is a mixed question of law and fact which we review *de novo*. *Robinson*, 913 F.2d at 714. Throughout our inquiry, we must focus "on what the defendant understood, rather than on what the court said or understood." *United States v. Harris*, 683 F.2d 322, 325 (9th Cir.1982).

■ Garrett argues that the trial court failed properly to inform him of the charge of aiding and abetting. We disagree. The record reflects that the district judge read the actual indictment on aiding and abetting, and explained in detail the meaning of the charges in lay terms. The judge asked Garrett if he understood what she had told him. He answered "yes" each time. The colloquy sufficiently informed him of the nature of the charges.

The record also shows that the district judge properly informed Garrett of the possible penalties he faced. For each of the two counts the court explained the maximum penalty, the monetary fines, and the type of probation he could receive. Furthermore, the court explained that he could face enhancements under the sentencing guidelines due to his prior convictions and that he might be classified as a career offender. The court asked him whether he understood this and he replied, "yes."

Finally, Garrett argues that the district court failed to adequately inform him of the disadvantages of self-representation. The record does not support this contention. To the contrary, on numerous occasions the court explicitly warned Garrett of the disadvantages of self-representation and advised him that he should allow Senters to serve as counsel. The court explained that he would be on his own, and offered a detailed explanation of all the "core functions" he would have to perform as an attorney and how his role might be limited. At the conclusion of the April 15 hearing, the court continued the motion for a week giving Garrett time to consider his waiver decision fully. At the following hearing on April 22nd, the district judge made an express finding for the record that Garrett knowingly and voluntarily waived his right to counsel.

The district court conscientiously explained each of the critical elements to Garrett, emphatically discouraged him from waiving his right to counsel, and gave him extra time to consider his decision. We conclude that it conducted a careful and proper inquiry regarding Garrett's capacity to represent himself, and that Garrett knowingly and voluntarily waived his right to counsel.

## II.

■ Garrett's second claim is that the district court abused its discretion by refusing to grant him a one-month continuance so that his newly retained counsel could fulfill prior commitments and prepare adequately for trial, principally the latter. We have previously held that a defendant has a constitutional right to hire counsel of his choice which may only be abridged to serve a "compelling purpose." *United States v. D'Amore*, 56 F.3d 1202 (9th Cir.1995) (quoting *United States v. Lillie*, 989 F.2d 1054 (9th Cir.1993)). Furthermore, when a defendant is erroneously denied a continuance for the purpose of retaining counsel of his choice, prejudice is presumed. Here, Garrett is not required to make a showing of prejudice, *D'Amore*, 56 F.3d at 1204, 1206; rather, he is entitled to a reversal absent a compelling purpose that warrants denial of the continuance.[1]

In *D'Amore*, we concluded that the district court failed to demonstrate a compelling purpose when it denied the defendant's request, made on the day before the scheduled hearing, to substitute retained counsel of his own choosing for court-appointed counsel, even though the substitution would have required a delay in the proceedings. We announced that "even when the motion is made on the day of trial, the court must make a balancing determination, carefully weighing the inconvenience and delay against the defendant's important constitutional right to counsel of his choice." *Id.* at 1206. We concluded that the district court failed to conduct an adequate inquiry, noting that it had reached a tentative conclusion before it even held the hearing on the motion, that it conducted only a cursory proceeding in which none of the attorneys argued the motion, and that it did not attempt to gauge how much inconvenience would be caused by the continuance. *Id.* at 1205.

■ Here, just as in *D'Amore*, the district court did not engage in an adequate inquiry

---

1. The government, citing *United States v. George*, 85 F.3d 1433 (9th Cir.1996), and *United States v. Mejia*, 69 F.3d 309 (9th Cir.1995), incorrectly argues that Garrett must demonstrate prejudice. Neither case, however, involved a defendant's request for a continuance so that a newly retained counsel could prepare for trial. In *Mejia*, the defendant sought a continuance for the purpose of allowing two government witnesses to testify live. *Mejia*, 69 F.3d at 314. *Mejia* did not involve a defendant's Sixth Amendment right to counsel, and accordingly we held that a showing of prejudice was required. *Id.* In *George*, the district court denied the defendant's request for a continuance, which was made after the court, part-way through trial, granted his request to proceed *pro se* rather than as co-counsel of his

appointed attorney. *George*, 85 F.3d at 1439–40. The facts in *George* are unusual in that the district court had accorded *George* all the benefits of *pro se* status when it granted his pretrial request to proceed as co-counsel. *Id.* We concluded that, in effect, no real change had occurred in the nature of his representation, particularly since George already had proceeded as counsel. Under those circumstances, we required that George make a showing of prejudice. *Id.* However, when a defendant requests a continuance for the purpose of retaining new counsel and the trial has not yet commenced, the law is clearly established that the defendant is not required to make a showing of prejudice. *D'Amore*, 56 F.3d at 1206.

into the merits of Garrett's motion. First, the record demonstrates that, here too, the district court was predisposed to deny the motion before the hearing. Second, once again, neither the defendant nor his retained attorney was given an opportunity to argue the merits of the motion. Finally, and most important, the court did not inquire adequately into the extent of the potential inconvenience, if any, the parties or the witnesses would suffer if a delay were to occur. As we observed in *D'Amore,* a detailed inquiry is critical to a determination as to whether "a compelling purpose would be served by denying the defendant his qualified constitutional right to hire counsel of his choice." *Id.* at 1206.

In *D'Amore,* we concluded that the extent of inconvenience was outweighed by the defendant's right to retain his own counsel. *Id.* Similar considerations require a similar result here. D'Amore notified the court of his conflicts with appointed counsel ten days before the hearing, while Garrett advised the court eleven days before trial that he was trying to obtain counsel. *Id.* at 1203. Both sought formally to change representation one day before the proceedings were to commence. In neither case was any serious inconvenience to witnesses shown. That in one instance the motion was for a substitution of counsel and it was denied because a continuance would have been necessary, while in the other the motion was for a continuance in order to permit newly retained counsel to provide proper representation, is irrelevant. While the form of the two motions is different, the substance is the same. Both motions—for substitution of counsel and for a continuance to permit substitution of counsel—raise the same practical and legal considerations; both serve the same purpose and attempt to accomplish the same result. The criteria that apply to determining the outcome of the two forms of motions are identical.

When Garrett requested the continuance, the district court based its decision to deny his motion on the ground that it would disrupt the court's calendar. The court stated: "I have a schedule just like you have a schedule and we set up this schedule a long, long time ago." While the court's concern that the continuance would require changes in its calendar is a factor to which we give *some* weight under *some* circumstances, such a consideration is not ordinarily an important factor in determining whether a *compelling* reason exists to deny a defendant the right to counsel of his choice. In any event, no factor may be considered in the absence of a factual record. Here, the district court, which had been careful to protect Garrett's rights on prior occasions, simply gave vent to its understandable frustration and failed to point to any facts in the record that are susceptible of review.

The only other indication of inconvenience that we can discern from the record is the prosecutor's statement that the government's three bank witnesses would have to alter their schedules. If the witnesses had traveled from another city or incurred great expense to testify at trial, the inconvenience might have been of *some* significance. *See United States v. Shuey,* 541 F.2d 845, 847 (9th Cir.1976) (noting inconvenience when government spent substantial time and money locating and subpoenaing witnesses from Texas and Hawaii). Here, however, all three witnesses were from in-town. There are no facts in the record that would support a finding that a one-month continuance would have caused a significant inconvenience to any of them or to anyone else involved with the trial.[2]

Unlike *D'Amore* which involved the denial of a motion to substitute newly retained counsel for court-appointed counsel, here the denial of Garrett's motion resulted in his self-

---

**2.** The dissent relies exclusively on dicta in *United States v. Lillie,* 989 F.2d 1054 (9th Cir.1993), that the court *may* have discretion to deny a request to substitute retained counsel for appointed counsel when a delay in the trial will be required. *Lillie* said that the "right to retained counsel of [one's] choice doesn't [sic] include the right to *unduly* delay the proceedings." *Lillie,*

989 F.2d at 1056 (emphasis added). *Lillie* also noted that some delays may "seriously inconvenienc[e] ... witnesses." *Id.* Here, the delay was not undue. Nor was any serious inconvenience of any kind established. Thus, even under the *Lillie* dicta, the district court's actions were erroneous.

representation at trial. The test that must be met before a district court may deny a motion which would permit a *pro se* criminal defendant to obtain representation is at least as strict as the compelling purpose test we apply when a defendant wishes to substitute one lawyer for another, if not more so. As we have often recognized, and have already reiterated *supra,* a defendant who represents himself is almost certainly at a disadvantage when compared to a defendant who is represented by trained counsel. *Cf. Robinson,* 913 F.2d 712, 714 (9th Cir.1990). Because reversal is required here under the "compelling purpose" test, we need not determine whether an even stricter standard applies in cases in which the denial of a continuance results in representation *pro se* rather than by qualified counsel. We can, however, conceive of few if any circumstances that would justify denial of a request for a continuance by a *pro se* defendant who wishes to retain counsel who will be able to represent him within a reasonable time. This is so whether or not the defendant had earlier been represented by one or more counsel and had discharged them with or without justification.

The government argues finally that on the day after the district court denied Garrett's motion for a continuance, the district judge made a specific factual finding that Garrett's belated request for counsel "was made for a purpose of delaying." First, we note that our review of the district court's decision is limited to the evidence before it at the time it made its ruling. *D'Amore,* 56 F.3d at 1206. Here, the district court made its post-hoc statement regarding delay on June 18, the day after it had rendered its decision. The court did so at the government's prompting, when the Assistant United States Attorney requested that the court "amplify the record." Although the government did not "amplify" its request, the district judge immediately responded by announcing her conclusion that Garrett's expressed desire to retain counsel constituted a deliberate attempt to delay trial. At no time on the previous day, when she denied Garrett's motion did the district judge mention the possibility that he was less than sincere in his expressed desire to be represented by counsel, nor did she even hint that Garrett might

be trying to manipulate the trial proceedings in any way. Under these circumstances, we must carefully scrutinize the court's precipitous post-hoc finding of delaying tactics to determine if it is factually supported in the record and if it justifies the denial of Garrett's motion.

Significantly, the court's statement on June 18 that "[t]here is nothing to indicate the proposed retained counsel is not prepared to go to trial" is flatly contradicted by the record of the previous day's proceedings. On the basis of the quoted June 18 statement, the court apparently concluded belatedly that the defendant's request for more time was not genuine. But on June 17, Ramsey, the counsel who had agreed to represent Garrett, stated that "[e]ven if I could adjust my schedule, I think I would need additional time to prepare for this case ... I think there's a lot of work to be done and I just don't feel that I could—it would be ineffective assistance of counsel if I took this case and then tried it without having at least two to three weeks, or three to four weeks to investigate it and prepare for it." Aside from the fact that Ramsey's clear and unequivocal statement that he was *not* prepared establishes beyond question the inaccuracy of the court's recollection that there was nothing to that effect in the record, the court, itself, had agreed on June 17 that Ramsey, indeed any counsel, would need the additional time to prepare adequately for trial. Specifically, the day before it made its factual finding, the district court responded to Ramsey's comments as follows: "I understand your position and that would be the position of virtually any attorney who's called at the last minute."

▆▆▆ The only factual basis in the record that could under any circumstances support the court's statement that Garrett's motion was a delaying tactic is that Garrett's earlier difficulties with counsel had previously caused several delays of the scheduled trial date. But delays caused largely by conflicts with counsel do not in themselves indicate dilatory tactics by the defendant. *See United States v. Wadsworth,* 830 F.2d 1500, 1508 (9th Cir.1987). Nor are general statements as to delaying efforts sufficient to

justify the denial of a defendant's motion. *See D'Amore*, 56 F.3d at 1207. Specific facts that establish that the conflicts were not genuine or were created for ulterior purposes must be provided. Similarly, the specific nature of the delaying efforts must be identified as well as the facts demonstrating the validity of the court's conclusions. In *D'Amore*, we rejected the court's general statements that the case had been "pending for a very long time" and that there was evidence of "efforts being made to avoid and delay responsibility." *Id.* Likewise, here, the court's statements that the case had been "set for trial a long time ago" and that Garrett's motion was "made for a purpose of delaying" are insufficient to justify its finding. In light of the post-hoc nature of the court's finding of delay, the fact that the record squarely contradicts the court's factual assertions, and the absence of adequate evidence supporting the delaying charge, we conclude that the finding of delaying tactics was clearly erroneous.[3]

In sum, the record does not demonstrate that there was a compelling purpose to justify the district court's denial of Garrett's motion. The district court engaged in an inadequate inquiry into the merits of his motion, and there is no showing that a continuance would have caused more than inconsequential inconvenience to the court, the witnesses, and the parties. The assertion that Garrett's motion was motivated by strategic delaying tactics is not supported by the record. Finally, the denial of the motion resulted in Garrett's representing himself at trial without the assistance of a trained attorney. As the Supreme Court stated long ago in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), "[i]t is vain to give the accused a day in court with no opportunity to

prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case." *Id.* at 59, 53 S.Ct. 55. We conclude that the district court abused its discretion, *see D'Amore*, 56 F.3d at 1204, in denying Garrett's motion to continue the trial for thirty days so that his newly retained counsel could adequately prepare for trial.

## CONCLUSION

With regard to Garrett's first claim, we conclude that the district court conducted an adequate colloquy and that, initially, Garrett knowingly and intelligently waived his right to counsel. However, as to the claim regarding the motion for a continuance filed after Garrett changed his mind and decided to retain counsel, we conclude that the district court abused its discretion by denying his request for a one-month continuance. The denial was not justified by a compelling purpose and violated Garrett's Sixth Amendment right to counsel. Accordingly, we VACATE Garrett's conviction and REMAND the case for further proceedings consistent with this opinion.

VACATED and REMANDED.

TASHIMA, Circuit Judge, dissenting in part:

I concur in Part I of the majority opinion; however, I dissent from Part II and from the judgment.

The majority has misapplied *United States v. D'Amore*, 56 F.3d 1202 (9th Cir.1995), and the "compelling purpose" test in this case. *D'Amore* involved a probation revocation

---

**3.** The government's citation to *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir.1979), a case in which a defendant was charged with driving in a careless manner in a national park, is unavailing. In *Leavitt*, the district court denied the defendant's motion for a continuance on the grounds that it would cause significant inconvenience to the government's witnesses, that the defendant had been given multiple opportunities to prepare for trial with the assistance of a federal public defender and had offered no explanation for his failure to prepare during the four months preceding trial, and that the case was a

simple one. *Id.* at 1293–94. In *Leavitt*, we gave no indication that the district court had erred in making these findings and did not note the existence of any evidence in the record that would have contradicted the district court's conclusions. *Id.* We therefore affirmed the lower court's denial of the motion. *Id.* By contrast, our decision here reversing the district court's denial of Garrett's motion is based on the fact that the district court failed to make proper factual findings to support its decision and that its conclusions were contradicted by the facts contained in the record.

hearing.[1] *Id.* at 1203. Thus, any compelling purpose that would arise from a trial court's need to manage a busy trial docket was necessarily absent in that case.

The case that should control here is the case on which *D'Amore* relied, *United States v. Lillie,* 989 F.2d 1054 (9th Cir.1993), which applied the "compelling purpose" test in a *trial* context. *Id.* at 1055. There, we clearly articulated the balancing which should control this case:

> If the motion for substitution necessarily leads to a continuance because the new lawyer isn't prepared to proceed, the court may (depending on the reasons for the proposed substitution) have discretion to deny the request: A defendant's right to retained counsel of his choice doesn't include the right to unduly delay the proceedings.... In this case, then, it would have been perfectly appropriate for the district court to inquire into the new counsel's preparedness, and to condition the granting of the motion on defendant's (and new counsel's) willingness to continue with the existing schedule.

*Id.* at 1056.

That is exactly what the district court did here. It inquired of new counsel's preparedness and learned that new counsel was unwilling and unable "to continue with the existing schedule." Given the history of delay in this year-old case [2]—that the defendant had discharged two appointed attorneys, then elected to proceed pro se, and then retained a third attorney the day before trial was scheduled to commence after ample warning by the court that if a new attorney were to be retained, it must be done in a timely manner—it was not an abuse of discretion for the district court to deny the defendant's last-minute request for a one-month continuance of the trial in order to substitute newly-retained counsel.

**1.** Revocation hearings are, of course, summary proceedings and do not involve the kinds of scheduling considerations and problems associated with jury trials. In fact, in *D'Amore* the defendant represented that if new counsel could be substituted, a plea agreement probably could be reached and the need for a hearing obviated. *D'Amore,* 56 F.3d at 1204.

I would affirm the judgment of conviction; accordingly, I dissent.

**2.** The presumptive period within which a non-complex case should be brought to trial under the Speedy Trial Act is 70 days from the filing of the indictment or the defendant's first appearance. *See* 18 U.S.C. § 3161(c)(1).