[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14856

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00232-CR-WS-M

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNIE DUANE JOHNS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 6, 2010)

Before TJOFLAT, CARNES and REAVLEY,* Circuit Judges.

PER CURIAM:

_____

\* Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting
by designation.

Johnnie Duane Johns pleaded guilty to one count of possessing pseudoephedrine with intent to manufacture methamphetamine ("meth"), in violation of 21 U.S.C. § 841(c)(1). He contends that: (1) the district court clearly erred by finding that he was competent to proceed to sentencing instead of holding a formal competency hearing; and (2) he received ineffective assistance of counsel during the plea and sentencing hearings. We affirm as to the competency ruling and dismiss the ineffective-assistance claim because it is not yet ripe for appellate review.

I.

In July 2007, a federal grand jury indicted Johns on four counts of drug-related offenses. Johns and three other individuals were charged with conspiracy to possess with intent to distribute in excess of 50 grams of meth, in violation of 21 U.S.C. § 846 (Count 1). Johns was also charged with two counts of possession of pseudoephedrine with intent to manufacture meth, in violation of 21 U.S.C. § 841(c)(1) (Counts 2 and 3), as well as one substantive count of possession with intent to distribute (Count 4).

Pursuant to a written agreement, Johns pleaded guilty to Count 2 in exchange for the government's agreement to drop the other charges, which it did. Johns stipulated that a factual resume attached to the plea agreement was accurate

and that the government could prove those facts at trial beyond a reasonable doubt.  Under the terms of the plea agreement, Johns waived his right to challenge his sentence in any appeal or collateral attack, with the following exceptions:  (1) a sentence in excess of the statutory maximum; (2) an upward departure from the guideline range; and (3) a claim of ineffective assistance of counsel.

In the plea agreement, which was signed on September 12, 2007, Johns stated that he was "not under the influence of alcohol, drugs, or narcotics," and that he was "in full possession of [his] senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow." Johns said he was "completely satisfied" with his legal counsel, who had discussed with him the facts of the case, the legal elements of the charges, the government's likely evidence, and possible defenses.  Johns also stated that he understood and voluntarily agreed to the plea agreement, and his counsel attested that Johns had made an informed and voluntary decision to plead guilty.

During the plea colloquy on September 14, 2007, defense counsel informed the court that Johns was "fully competent to enter a valid plea."  Johns confirmed that he had never been treated for mental illness or drug addiction and that he was not under the influence of drugs or alcohol at the time of the plea hearing.  In response to a number of questions by the district court, Johns acknowledged that

3

he and his attorney had "fully discussed" all of the facts surrounding the charges against him and that they had reviewed the indictment and the terms and conditions of the plea agreement. Johns also acknowledged that he understood: the nature and elements of the charges, the terms and conditions of the plea agreement, the potential penalties he was facing (including the fact that the sentence imposed might differ from any estimate his attorney had given him), the rights he would lose if convicted, and the rights that his guilty plea was waiving. Johns admitted that he had committed the offense conduct outlined in the factual resume of his plea agreement. He then pleaded guilty to Count 2 of the indictment, and his attorney confirmed that he knew of no reason the court should not accept Johns's guilty plea.

Based on the plea colloquy, the district court found that Johns was "fully competent and capable of entering an informed plea, that [he was] aware of the nature of the charge and the consequences of [his] plea, and that [his] plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact." The court accepted Johns's guilty plea and adjudicated him guilty.

The Presentence Report assigned Johns a base offense level of 34 because of the drug quantity and added a 2-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), because "a dangerous weapon was possessed." With a total offense

level of 36 and a criminal history category of I, Johns received an advisory guidelines range of 188 to 235 months imprisonment. The PSR also reported that Johns, while being interviewed by a probation officer, said that he had "never been evaluated or treated for any mental or emotional problems." The probation officer noted that Johns "communicated without difficulty and appeared to understand the seriousness of the charges." During the interview, Johns also said: "I am sorry I did it. I hated it while I was doing it. I wanted to quit, but I needed to supplement my income. It makes me sick to my stomach to know I am responsible for what it was doing to people's lives."

At the first sentencing hearing, on April 11, 2008, defense counsel moved for a continuance because he wanted time to investigate "whether this stuff he's been using for four-and-a-half years, mostly crystal meth, has damaged his brain." He argued that Johns's diminished capacity had interfered with their attorney-client relationship and that Johns was "not in touch with reality" and had "all the symptoms of a damaged brain." The government opposed the motion, arguing that Johns's ability to run a meth-cooking operation and broker pills demonstrated that he had the mental acumen necessary to stand trial. The court noted that "everybody who uses meth is in similar circumstances," but granted the

continuance and invited defense counsel to file a written motion for a competency hearing pursuant to 18 U.S.C. § 4241.

On April 21, 2008, defense counsel filed a motion to transport Johns for psychological testing in order to determine his mental competency, and the court granted the motion. Dr. Daniel Koch, a clinical psychologist, conducted an eight-hour evaluation and concluded, among other things, that Johns had Attention Deficit Disorder, suffered from bipolar disorder, and was mildly impaired. The report, however, did not make an express determination of Johns's competency to stand trial. As Dr. Koch would later explain, he conducted a mental health evaluation but not "a formal competency to stand trial assessment." Based on Dr. Koch's report, defense counsel drafted a motion to determine Johns's competency. That motion, which was filed the day before the sentencing hearing, asserted that Dr. Koch found that Johns had "a severe mental disease or defect," had an "organic brain impairment," and was "clearly impaired."

During the sentencing hearing on June 17, 2008, the court heard argument on the motion to determine Johns's competency. Defense counsel took the position that Johns "suffer[ed] from a severe mental disease or defect primarily as a result of his addiction to crystal meth and methamphetamine in any form." Johns's condition had worsened "since he entered his [guilty] plea," his counsel

6

asserted, because Johns "became addicted again" while he was released on bond. Johns was back in custody since his bond was revoked, but the jail allegedly was not medicating him. Counsel summarized Dr. Koch's report, noting that "some parts" of it indicate that Johns is "severely impaired and severely diseased as a result of this drug use." Counsel admitted, however, that the report "does not answer the question that we are dealing with right now." As defense counsel explained, it "doesn't say that he is mentally incompetent and doesn't say that he isn't."

Johns's father testified that his son (who was 35 at the time) did not have any mental problems in his teens and early 20s. Johns was a "fine young lad" who became an Eagle Scout. When he was in his mid- to late 20s, Johns finished second in his class at a technical college and had a steady job. In the four or five years before his arrest, however, Johns had become addicted to meth. Johns was "not like he used to be." He was "fidgety and won't pay attention to you." In order to carry on a conversation, "you have to go about it in pieces and ways, because he'll get off on some other things." Although Johns was "not well" and needed rehabilitation, he had not received any treatment since his arrest. According to his father, Johns had a brain impairment, could not take an active part in the proceedings, and did not "realize how much trouble he is in." Johns's

7

father testified that imprisonment had worsened his son's condition and that Johns was not "competent and able to understand what's going on here and defend himself as best he can."

On cross-examination, Johns's father admitted that he was not a medical expert and therefore could not dispute Dr. Koch's finding that Johns's degree of impairment was mild. Johns's father was aware that Johns had apologized to his probation officer for his actions, but was unaware that his son also had a conversation with case agents in which he acknowledged the amount of time he was facing and asked how he could cut that time.[1] John's father insisted that his son did not understand the consequences of the charges. He also said that he wanted Johns to pay for his crimes but not to serve a lengthy jail sentence.

Defense counsel requested a continuance so that Dr. Koch could testify. (Earlier in the hearing, defense counsel said that had he "appropriately prepared" he would have asked Dr. Koch to be present for the hearing.) The government objected, arguing that further delay was unnecessary and that the defense had failed to show "reasonable cause" to believe that Johns was mentally incompetent.

---

[1] Defense counsel noted in an objection that this conversation took place prior to Johns's plea.

See 18 U.S.C. § 4241(a). The district court granted the continuance without making any explicit factfindings at that time.

Dr. Koch testified at the continued sentencing hearing, which was held on June 25, 2008. Although he had not done a formal competency assessment of Johns, Dr. Koch had performed an eight-hour psychological evaluation of him. Based on that evaluation, Dr. Koch believed that he had a "thorough understanding" of Johns and that he "fully understood his condition." Dr. Koch testified that Johns had ADD since birth and that the condition often leads to bipolar disorder if left untreated. Meth has a calming effect on individuals with those disorders, but the resulting brain deterioration interferes with the substance abuser's judgment and his ability to relate to others. Dr. Koch said that pattern "indisputably" described Johns, who was "compromised in his ability to conform his conduct." In Dr. Koch's opinion, John's case of ADD was in fact a "severe mental disease or defect." Dr. Koch was specifically asked whether Johns was competent to be sentenced. He gave this response:

> I believe he's compromised. I believe he has a difficulty conforming his conduct, but I did not do a competency to stand trial evaluation. I ask different things at that point, and I inquire about his decisions during the duration of the criminal activity. I doubt that he was, but I have not inquired in detail into that, and I don't, I don't think I can say more than that given those limits.

9

On cross-examination, Dr. Koch reiterated that he had "not assessed [the competency] issue sufficiently to give an opinion on that." He also testified that a person who had brain damage was not necessarily suffering from a mental disease or defect that rendered him mentally incompetent. He acknowledged that the degree of Johns's impairment was mild, and that Johns could be stabilized with treatment. Johns's statement that it makes him "sick to [his] stomach" to know about the impact of his actions on people's lives, Dr. Koch admitted, "would certainly reflect at the time that he made that statement that at least in retrospect he had some insight." Dr. Koch testified that Johns was compromised but also that he could not state that Johns was mentally incompetent because he did not perform a formal competency assessment.

The court examined Dr. Koch, noting that it had "to find that there is reasonable cause to believe that [Johns] is incompetent before I can order that he be transferred to a facility for further evaluation. That's the standard that I'm dealing with here." Dr. Koch responded that: "the degree of his problem is such that there's certainly a good probability that he lacks competency to cooperate with his attorney in an effective way. That's about as much as I [can] offer." Dr. Koch informed the court that the results of a battery of brain integrity tests indicated that Johns's level of impairment was "in the mildest of categories," but

10

he noted that brain integrity is not necessarily a measure of mental competence. Dr. Koch reported that Johns's IQ is at the 14th percentile and his working memory is at the 7th percentile. According to Dr. Koch, "he's less capable than he appears, and he doesn't appear very capable." The court asked Dr. Koch whether Johns was cogent during his clinical interview, and Dr. Koch replied that he did not "experience any real difficulty" in communicating with Johns.

The district court noted that the issue of Johns's competence was "a serious matter." The court then found that defense counsel had not shown "that there is reasonable cause to believe that Mr. Johns is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense." Although Johns had failed to cooperate with his attorney or the government, the court did not "see[ ] anything to take Mr. Johns' case out of that usual kind of case" in which a defendant is uncooperative or returns to using illegal drugs. Because Johns had failed to satisfy his burden of proof under 18 U.S.C. § 4241, the court found him competent to be sentenced.

Without objection, the court then adopted the findings of the PSR and also gave Johns a three-level reduction for acceptance of responsibility. Johns's adjusted advisory guidelines range was 135 to 168 months. Johns addressed the

11

court, stating: "I am sorry for the actions that I did do in the past, and I just wish, you know, that you'll have leniency on me and let me get home, back home with my children as soon as possible." The district court then imposed a 135-month term of imprisonment, to be followed by 3 years of supervised release. Johns did not object to the sentence imposed.

Defense counsel initially filed a notice of appeal limited to one issue: "The defendant appeals the decision of the court denying that the defendant is incompetent." Counsel then attempted to file two "motions to dismiss" the appeal that did not comply with appellate procedure under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1967). After this Court rejected those motions, counsel filed an Anders brief and a motion to withdraw asserting that there was no arguably meritorious issue for appeal. We disagreed with counsel's conclusion, removed him from the case, and appointed new counsel to represent Johns on appeal. We directed new counsel to file a merits brief addressing, at a minimum, whether Johns's appeal waiver bars appellate review of his claim that he was mentally incompetent to be sentenced, and, if not, whether the district court erred in finding that he was competent to be sentenced.[2]

_____

[2] The government concedes that Johns's sentence appeal waiver cannot serve to bar his claim that he was incompetent to plead guilty and be sentenced. As the government correctly explains, Johns's appeal waiver itself would be invalid if Johns lacked the mental competence to understand and appreciate the nature and consequences of the plea agreement. See, e.g., LoConte

12

II.

The Due Process Clause of the Fifth Amendment prohibits the government from convicting or sentencing a defendant who is incompetent at the time of those proceedings.  See U.S. Const. amend. V; Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838 (1966); United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005) ("Whether the defendant is competent is an ongoing inquiry; the defendant must be competent at all stages of trial.").  "The legal test for competency is whether the defendant had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'"  United States v. Cruz, 805 F.2d 1464, 1479 (11th Cir. 1986) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789 (1960)).

"Due process requires that an adequate hearing be held on competency when the evidence raises a 'bona fide doubt' as to defendant's competency to stand trial" or be sentenced.  Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987); see also Drope v. Missouri, 420 U.S. 162, 172–73, 95 S.Ct. 896, 904–05 (1975); Pate, 383 U.S. at 385, 86 S.Ct. at 842.  "Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical

v. Dugger, 847 F.2d 745, 751 (11th Cir. 1988).

13

opinion, but 'there are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed.'" Watts v. Singletary, 87 F.3d 1282, 1287 (11th Cir. 1996) (brackets omitted) (quoting Drope, 420 U.S. at 180, 95 S.Ct. at 908). Although those are constitutional requirements, Congress has decided to express them in a statute as well. See 18 U.S.C. § 4241; see also United States v. Cornejo-Sandoval, 564 F.3d 1225, 1233 (10th Cir. 2009) ("There is good reason to believe that Congress envisioned § 4241 as embodying at least as much procedural protection as the standard described in Pate."); United States v. Swanson, 572 F.2d 523, 526 (5th Cir. 1978) (explaining that § 4241's precursor "enforces the due process requirement" identified in Pate).[3]

At any time between the commencement of prosecution and the sentencing of the defendant, the defendant or the government may move for a competency hearing. 18 U.S.C. § 4241(a). From that point forward, § 4241 lays out a three-stage process for the district court to follow. First, the district court "shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id. Second, if the court decides to conduct a competency hearing, it may order a psychiatric or psychological examination and written report. Id. § 4241(b). Any such report shall include the examiner's opinions as to diagnosis, prognosis, and whether the defendant is mentally incompetent. See id. §§ 4241(b), 4247(c)(4)(A). Third, after a proper hearing,[4] the district court must find "by a preponderance of the evidence [whether] the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent."[5] Id. § 4241(c), (d). If the defendant is deemed legally incompetent, he will be hospitalized and treated until he is competent for the proceedings to resume or the pending charges are disposed of according to law. See id. § 4241(d).

---

[4] Section 4241(c) provides that the competency hearing must conform to the provisions of § 4247(d), which states that the defendant "shall be represented by counsel" and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." See 18 U.S.C. §§ 4241(c), 4247(d).

[5] Where the defendant files a motion to determine his mental competency, as Johns did in this case, the burden of proof is on the defendant. See United States v. Izquierdo, 448 F.3d 1269, 1278 (11th Cir. 2006); see also Cooper v. Oklahoma, 517 U.S. 348, 362, 116 S.Ct. 1373, 1380 (1996) (dicta) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

15

A district court's denial of a § 4241 motion for a competency hearing, or its decision not to hold such a hearing sua sponte, is reviewed for abuse of discretion. See United States v. Nickels, 324 F.3d 1250, 1251 (11th Cir. 2003); United States v. General, 278 F.3d 389, 396 (4th Cir. 2002) ("Whether reasonable cause exists is a question left to the discretion of the district court."). The decision whether to order an examination is also reviewed for abuse of discretion. See United States v. George, 85 F.3d 1433, 1437 (9th Cir. 1996) ("[E]ven if the existence of reasonable cause requires a competency hearing, the court clearly has discretion to determine whether an examination is also necessary. The statute's language therefore indicates that we should review a district court's decision to deny an examination for abuse of discretion."); see also Nickels, 324 F.3d at 1251. Because "[a] district court's competency determination is primarily factual in nature," United States v. Izquierdo, 448 F.3d 1269, 1278 (11th Cir. 2006), it is "subject to reversal only for clear error," United States v. Hogan, 986 F.2d 1364, 1371 (11th Cir. 1993). "A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." Izquierdo, 448 F.3d at 1278 (quoting Hogan, 986 F.2d at 1372).

A.

16

Johns contends that the district court's finding that he was competent, absent a formal competency examination, constitutes an abuse of discretion. He argues that the court should have continued his sentencing hearing so that Dr. Koch could formally evaluate his competency. Johns asserts that the court had a "bona fide doubt" regarding his mental competency; in the language of § 4241(a), Johns is arguing that a reasonable factfinder would have had "reasonable cause" to believe that Johns may have been mentally incompetent. We note that Johns is challenging the procedural adequacy of the court's determination instead of the substantive competency finding itself. See McGregor v. Gibson, 248 F.3d 946, 952 (10th Cir. 2001) (en banc) ("A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent."). Johns has not argued that the existing record compels a finding that he was incompetent to be sentenced.[6] Instead, he argues that the district court failed to hold an adequate competency hearing before making its competency finding.

---

[6] We would have rejected that argument had Johns presented it to us. Johns admits in his brief, as he must, that "Dr. Koch was unable to give an opinion as to John's competency." In addition, Dr. Koch acknowledged that the degree of Johns's impairment was mild, that Johns was able to communicate with him, and that John's statement to the probation officer indicates that Johns understood the seriousness of the charges against him.

The district court's determination that Johns was competent to be sentenced, even though Dr. Koch had not completed a formal competency evaluation, was not an abuse of discretion. See Nickels, 324 F.3d at 1251; General, 278 F.3d at 396. Dr. Koch had already performed an eight-hour psychological evaluation of Johns. He testified that he had a "thorough understanding" of Johns and that he "fully understood his condition." The district court asked Dr. Koch a series of questions eliciting that Johns's degree of brain impairment was "in the mildest of categories" and that Dr. Koch did not "experience any real difficulty" in communicating with him. It was reasonable for the district court to give great weight to those specific assessments. In addition, the court was aware of comments that Johns had made to his probation officer indicating that Johns understood the seriousness of the charges. Moreover, Johns personally apologized to the court and requested that the court sentence him leniently, which confirmed that he understood the nature of the proceedings and was able to communicate. We cannot say that the district court abused its discretion by deciding, without continuing the sentencing hearing, that it had no reasonable cause to believe that Johns may have been mentally incompetent.

B.

Johns also asserts in passing that he was legally incompetent at the time he pleaded guilty, but all of his arguments focus on whether he was competent at the time of the sentencing hearing—seven months after the plea colloquy. To the extent that Johns has not abandoned this claim, see United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003), we can interpret it in two ways, neither of which persuades us that the district court abused its discretion. First, Johns may be arguing that the district court should not have accepted his guilty plea because, at the time of the plea colloquy, the court had "reasonable cause" to believe he was legally incompetent. See 18 U.S.C. § 4241(a). However, the record reflects that the district court conducted a thorough plea colloquy to ensure that Johns was competent. And Johns's counsel informed the court that Johns was "fully competent to enter a valid plea" and reiterated that observation before the court accepted Johns's guilty plea. The court did not abuse its discretion in accepting Johns's guilty plea.

Second, Johns may be arguing that the district court, based on information it learned after the plea colloquy, should have invalidated Johns's guilty plea. However, there is no evidence in the record to support that position. Soon after the plea colloquy, Johns apologized to the probation officer, which indicated that Johns communicated without difficulty and understood the seriousness of the

19

charges. And the district court learned that Johns's condition was better at the time of the plea colloquy; it had deteriorated "since he entered his [guilty] plea." Dr. Koch's testimony gave the court no reason to believe that Johns was incompetent when he pleaded guilty, because Dr. Koch interviewed Johns several months after the plea colloquy and his testimony was geared toward Johns's condition during the sentencing hearings. The district court therefore did not abuse its discretion in failing to invalidate Johns's guilty plea.

## III.

Johns contends that his trial counsel was ineffective because he: (1) advised Johns that he would only receive a two- to three-year sentence if he pleaded guilty; (2) failed to request a continuance of the competency hearing to allow Dr. Koch to properly evaluate Johns's competence; (3) failed to file a motion to withdraw Johns's guilty plea; and (4) failed to object to a two-point enhancement that Johns received for having a firearm present during the offense even though the firearm was not mentioned in the indictment, guilty plea, or factual resume.[7]

"We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor

---

[7] We review de novo claims of ineffective assistance of counsel. Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000) (en banc).

20

develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (citation omitted). "In a few exceptional cases, however, we have taken review of a claim of ineffective assistance of counsel raised for the first time on [direct] appeal when the matter was fully apparent on the existing record." United States v. Gholston, 932 F.2d 904, 905 (11th Cir. 1991); see also Bender, 290 F.3d at 1284 ("If the record is sufficiently developed . . . this court will consider an ineffective assistance of counsel claim on direct appeal."). As the Supreme Court has instructed us, though, the preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion "even if the record contains some indication of deficiencies in counsel's performance." Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694 (2003); see also United States v. Patterson, 595 F.3d 1324, 1328–29 (11th Cir. 2010); Thomas v. United States, 572 F.3d 1300, 1305 n.5 (11th Cir. 2009).

Johns argues that the record is sufficiently developed because it is undisputed that trial counsel neither sought a continuance to allow Dr. Koch to conduct a formal competency evaluation or objected to the two-point firearm enhancement. Those are just bare facts, however. We cannot meaningfully review Johns's allegations of ineffective assistance until the record is developed with regard to trial counsel's strategic decisions, his communications with Johns, and

21

whether any arguably deficient performance was prejudicial under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984).  We therefore dismiss without prejudice the ineffective assistance claim part of Johns's appeal.[8]

**AFFIRMED IN PART; DISMISSED WITHOUT PREJUDICE IN PART.**

---

[8] This case was originally scheduled for oral argument, but the panel has unanimously decided that it is unnecessary.  <u>See</u> 11th Cir. R. 34-3(f).